KENDALLVILLE REFRIGERATOR COMPANY

v.

DANIEL J. DAVIS AND THOMAS RANKIN, COPARTNERS.

*Contracts—Discovery—Practice—Witnesses—Evidence.*

1. Where a duty rests upon a defendant to account, and where the matters for which an accounting is sought are peculiarly within the knowledge of the defendant, and discovery is sought, equity will assume jurisdiction to compel the discovery, and after a disclosure will retain the bill to grant complete relief.

2. Statutes rendering parties competent as witnesses do not necessarily abrogate jurisdiction in equity established at a time when parties were incompetent.

3. In the case presented, this court holds that the trial court erred in sustaining the demurrer to complainants' bill and the dismissal thereof, complainant being entitled to an account from the defendants, and a disclosure or discovery of the matters of which by their contract they agreed to inform it.

[Opinion filed June 2, 1891.]

APPEAL from the Superior Court of Cook County; the Hon. KIRK HAWES, Judge, presiding.

Bill, filed by a corporation of Indiana, complains of the defendants, appellees, and says that about the 29th day of July, 1887, complainant and defendants entered into a contract in writing, by which complainant licensed the defendants to construct a certain system of cold storage and refrigerators, secured to complainant by letters patent, in consideration of which license the defendants promised to pay to the complainant twenty-five cents per square foot, inside floor measurements, of all such refrigerators and cold-storage rooms constructed by the defendants, a copy of which contract is as follows:

" This agreement made the 29th day of July, 1887, by and between the Kendallville Refrigerator Company, of the city of Kendallville, Noble County, State of Indiana, of the

first part, and Davis & Rankin, of Chicago, Illinois, of the second part, witnesseth : That the said party of the first part hereby, on the terms and conditions hereinafter named, grants to party of the second part the right and license to use a certain system for cold-storage rooms and refrigerators covered by a certain patent, No. 253,933, and all improvements thereon, now owned by party of the first part in any part of the United States, except the State of Missouri, for the construction of refrigerators and cold-storage rooms; said party of the second part for said license agrees to pay therefor twenty-five cents per square foot, inside measure, of all such refrigerators and cold-storage rooms so constructed by them under this license, to be paid ninety days after the completion of each and every such refrigerator and cold-storage room.

" Said party of the second part agrees to furnish party of the first part the names of parties for whom they construct such refrigerators and cold-storage rooms, on completion of said rooms and refrigerators, and also the location and dimension of such cold-storage rooms and refrigerators, and said party of the first part is thereupon to execute to said party for whom such refrigerators and cold-storage rooms are constructed, a deed for the use of such rooms and refrigerators under said patent, and on failure of party of the second part to report the size and dimension and locations of rooms and refrigerators so constructed by them, then this license to be null and void; and it is agreed and understood that party of the first part hereby agrees to allow to party of second part, as commissions for construction of said refrigerators and rooms under this license, a rebate of one-half of said price of twenty-five cents per square foot, as hereinbefore mentioned; and it is hereby further agreed that either of the parties to this contract can revoke and annul this contract, in mailing to the other party a notice to that effect, executed in duplicate.

" KENDALLVILLE REFRIGERATOR CO.

" H. RUTH, Sec't'y.

" DAVIS & RANKIN, by Lewis Jones, Agt.·

That in pursuance of said contract and down to the 14th

day of January, 1889, defendants constructed a large number of said cold-storage rooms and refrigerators in various parts of the United States, but how many the complainant is unable to state, for reasons hereinafter mentioned; that certain of the cold-storage rooms and refrigerators so constructed by the defendants were reported to the complainant, and the complainant, at the request of the defendants, furnished deeds to various parties entitled to the same under said contract for eleven of said cold-storage rooms, amounting under the terms of the contract to $1,483.52, after deducting the commission or rebate allowed the defendants under the contract; that the defendants paid the complainant on account of such cold-storage rooms so constructed the sum of $127.50 only. Complainant avers that prior to January 14, 1889, defendants constructed other cold-storage rooms and refrigerators covered by said patent and under said contract, the dimensions and locations of which, together with the names of the parties for whom they were constructed, the defendants did not report to the complainant according to the terms of their contract, although requested so to do; that two of said cold-storage rooms constructed by the defendants, and not reported by them, have, by accident, been discovered by the complainant, upon which there is due the complainant $255; that complainant does not know the number, dimensions, locations or names of the parties for whom the remainder of the cold-storage rooms and refrigerators, not reported by the defendants, were constructed; that complainant has demanded a report from the defendants of the cold-storage rooms constructed under said contract, and has asked to be permitted to examine defendants' books for that purpose, all of which the defendants refused. Complainant offers to make deeds to proper parties for said cold-storage rooms when names, locations and dimensions are given.

Complainant avers that it has no means of ascertaining what cold-storage rooms and refrigerators have been constructed under said contract, except through the defendants or their books, and can not, without a disclosure of the same by the defendants, estimate or tell how much the defendants owe the

complainant under said contract in addition to the sums herein mentioned; that, on the 26th day of September, 1888, defendants repudiated said contract and the validity of complainant's patent, and declared they would pay no more money on account of the same, and complainant, about the 14th of January, 1889, notified defendants that their license under said contract was revoked.

Complainant avers that its letters patent remain in full force and have never been revoked or modified in any degree. Prayer that said defendants may be required to make answer under oath to all matters and things in said bill stated and charged; and that they make full and complete discovery of the locations and dimensions, and names of parties for whom they were constructed, of all said cold-storage rooms and refrigerators constructed by the defendants under said contract, or which embody any of the principles described in said letters patent; and that they disclose all such cold-storage rooms and refrigerators constructed by them down to the 14th day of January, 1889; and especially that they set forth and discover whether it is not a fact that they entered into the contract set out in the bill of complaint; in what respect, if any, said contract is not set out accurately; whether or not it is a fact that defendants requested and received deeds for cold-storage rooms at various places named in the interrogatory.

Interrogatories four to eight, inclusive, addressed to defendants, regarding cold-storage rooms constructed by them, and the contract under which they were constructed, and regarding the system of cold storage contracted by them to be constructed.

Interrogatories nine to fifteen, inclusive, regarding the time of the construction of cold-storage rooms and their completion, and the dimensions and the system under which they were constructed, and which they had not reported to the complainant.

Prayer that the defendants may be decreed to pay to the complainant said sums of $1,483.52 and $255, and any and all other sums which may be justly due to complainant under said contract for cold-storage rooms and refrigerators con-

structed by the defendants and not reported as hereinbefore set out, and for such other and further relief in the premises as the nature of the case may require, and to your honors shall seem meet.   Prayer for summons.

The joint and several demurrer of the defendants to the amended bill of complainant; that complainant has not in and by its said bill made or stated such a case as doth or ought to entitle it to any such discovery or relief as is thereby sought; and that from the allegations of said bill complainant hath a complete remedy at law.

Prayer for judgment whether the defendants shall be compelled to make any further answer, and that they be dismissed with their costs.

Order of court entered January 26, 1891, sustaining the demurrer to the said amended bill of complaint.   The complainant elects to stand by its said bill, therefore it is ordered that this cause be and the same is hereby dismissed at complainant's cost for want of equity, and that the defendants do have and recover of and from the complainant their reasonable costs in this behalf expended, and have execution therefor.

Messrs. SHUMAN & DEFREES, for appellant.

We claim that the averments of the bill bring the cause within the jurisdiction of a court of chancery.

1.   Because it is a bill for discovery asking for incidental relief.

2.   Because it is a bill for an accounting upon a matter concerning which the defendants covenanted to account, and concerning which they stood in a fiduciary relation to complainant; i. e., upon the faith of the covenant to account, the defendants were made the sole depository of the information necessary to an accounting.

Upon the first proposition we have to say that a bill for discovery is proper, either when the complainant therein has no other proof than that which he expects to elicit by its means from the defendants, or when he needs the matter thus disclosed to supplement and aid other evidence which he fur-

nishes.   Story's Eq. Jur., Vol. 2, Sec. 690, 13th Ed.; Marsh
v. Davidson, 9 Paige, 580; Seymour v. Seymour, 4 Johnson's
Chancery, 409; Cannon v. McNabb, 48 Ala. 99.

Equity having obtained jurisdiction for purposes of discov-
ery will grant relief that is purely legal.   The court having
acquired cognizance of the suit for the purpose of discovery
will entertain it for the purpose of relief in most cases of
fraud, account, accident and mistake.   13th Ed., Story's Eq.
Jur., Vol. 1, Secs. 64 k and 71; Sanborn v. Kittridge, 20 Vt.
632; Holmes v. Holmes, 36 Vt. 535; Russell v. Clark, 7
Cranch. 69, see page 89.

In the last case the court say that "if certain facts essen-
tial to a claim purely legal be exclusively within the knowl-
edge of the party against whom the claim is asserted, he may
be required in a court of chancery to disclose those facts, and
the court being thus rightfully in possession of the cause will
proceed to determine the whole matter in controversy.   To
the same effect are Story's Eq. Jur., 13th Ed., Sec. 64 k, and
456; Cannon v. McNabb, 48 Ala. page 99."

The rule is well stated by Fonblanque, 1 Eq., Bk. 1, Chap.
1, Sec. 3, note F:   "The concurrence of jurisdiction may, in
the greater number of cases in which it is exercised, be justi-
fied by the propriety of preventing a multiplicity of suits; for
as the mode of proceeding in courts of law requires the
plaintiff to establish his case without enabling him to draw
the necessary evidence from the examination of the defend-
ant, justice could never be attained at law in those cases where
the principal facts to be proved by one party are confined to
knowledge of the other party.   In such cases, therefore, it
becomes necessary for the party wanting such evidence to
resort to the extraordinary powers of a court of equity, which
will compel the necessary discovery; and the court, having
acquired cognizance of the suit for the purpose of discovery,
will entertain it for the purpose of relief, in most cases of
fraud, account, accident and mistake."

This language is quoted with approval by Mr. Story in the
1st Vol. of his Eq. Jur., Sec. 64 k, 13th Ed.

The rule is recognized by our own Supreme Court in the

case of Martin v. Dryden, 1 Gilman, 187, old Ed., see page 210.

It will be claimed by the other side that since the enactment of the statutes in this State, providing for the examination of defendants and the production of books and papers in suits at law, that we have an adequate remedy at law, and therefore no right to file a bill for discovery.

We claim the statutes are simply enactments enlarging the methods of proceeding at law, and do not attempt in any way to affect remedies which were before of equitable cognizance. The very question applied to bills of discovery, both in England, where similar statutes have been passed, and in this country, has been decided in accordance with our theory in the following cases: Cannon v. McNabb, 48 Ala. 99; Millsaps v. Pfeiffer, 44 Miss. 805; Shortwell v. Smith, 20 N. J. Eq. 79.

The same principle applied to another state of facts, and which, if there were no other authority, it seems to us, is conclusive to the question in this case, is laid down in McNabb v. Heald, 41 Ill. 326, page 330, where the court say: "The rule is well recognized that where equity has jurisdiction and an act of the Legislature confers like jurisdiction on a court of law, it then becomes concurrent in the two courts. * * * Unless there are prohibitory or restrictive words applied, the uniform interpretation is that they confer concurrent and not exclusive remedial authority."

Messrs. GEORGE W. CRAWFORD and CROSS & COLLINS, for appellees.

At the present time a court of equity will not take cognizance of every action for discovery and account. In Bispham's Principles of Equity (4th Ed.), Sec. 566, is the following : " At common law no power existed in the courts to compel the production of deeds, books and writings, which were in the custody or control of one of the parties to a cause, and which were material to the right, title, or defense of the other. Application was consequently made to the court of chancery, and the jurisdiction of the chancellor was fre-

quently exercised for the purpose of rectifying the defect in the common law and of compelling such production.

" This equitable remedy is, however, of scarcely any importance at the present day, as both in England and this country statutes have been passed by which the authority to compel the production of documents is conferred upon the common law courts."

That equity will not interfere where complainant has a full, adequate and complete remĕdy at law, is a principle which has been enunciated and settled in the following cases in this State: Coughran v. Smith, 18 Ill. 414; City, etc., v. Kidder, 26 Ill. 352; Felsenthal v. Johnson, 104 Ill. 21; Moore v. Hoisington, 31 Ill. 243; Stewart v. Mumford, 80 Ill. 192.

Prior to the enactment of the statutes hereinbefore set forth, compelling an adverse party to testify, and providing for the production of his books in a court at law, the jurisdiction of equity in this class of cases was undoubted; but by the creating of such statutes the reason for the exercise of the extraordinary jurisdiction of equity was done away with, and the chancery court may now, in the exercise of a sound discretion, relegate suitors to the common law courts. In Wait's Act. & Def., Vol. 3, page 181, the rule as to bills of discovery at the present time, is laid down as follows :

"The mode of redress by bill of discovery was of very great importance so long as no power to elicit testimony from a party to an action existed at common law. But since, by statutes in most of the States, parties to actions have been made competent and compellable to testify, and the production of books and papers may now be enforced in proceedings at law; the common law tribunals have been rendered to a great extent independent of the auxiliary jurisdiction of equity in this regard."

The cases cited by appellant are none of them in point. The text as laid down by Story and cited by counsel was undoubtedly true at the time it was written, but since that time common law courts have been invested with such ample powers in reference to the production of books, papers and documents, that the reasons for the exercise of equitable jurisdiction have ceased to exist.

Bills of discovery are addressed to the discretion of the chancellor. If, in the exercise of discretionary powers, he determines that a law court is the proper forum for the litigant, an Appellate Court will not reverse, because had the decision been to the contrary, the act of the chancellor would not have been beyond his jurisdiction.

"A court of equity is not always bound to act, though its decree in a given case might not be void for want of jurisdiction." Wait's Act. & Def., Vol. 3, p. 158; Scott v. Whitlow, 20 Ill. 310.

Moran, P. J. The demurrer admits the contract set out in the bill and the dealings alleged in pursuance of said contract, that complainant is ignorant of the names of parties for whom refrigerators have been constructed by defendants, and of the number, dimensions and location of such refrigerators constructed under complainant's system, and the contract contains an agreement that defendants shall furnish such information to complainant. Defendants then, by contract, undertook to account, and without such account it can not be ascertained how much defendants are indebted.

Such circumstances entitle complainant to an account from the defendants and a disclosure or discovery of the matters which, by their contract, they agreed to inform complainant of. McKenzie v. Johnson, 4 Madd. 198; Pope v. Owsley, 27 Fed. R. 100.

"It is one of the usual grounds of equity jurisdiction to discover and compel an account of funds wrongfully concealed and withheld from the real owner." Russell v. Madden, 95 Ill. 485.

Where a duty rests upon the defendant to render an account and where the matters for which an accounting is sought are peculiarly within the knowledge of the defendant and discovery is sought, equity will assume jurisdiction to compel the discovery, and after a disclosure will retain the bill to grant complete relief. Story's Eq., Vol. 1, Secs. 456 to 459; Russell v. Clark's Ex'rs, 7 Cranch, 66; Halsted v. Robb, 8 Porter (Ala.), 63.

It is not seriously contended that equity would not have this jurisdiction before the passage of our statute giving the right to compel an adverse party to any civil action to testify as a witness on the trial, and giving the courts power in actions pending before them to compel the production of books and papers containing evidence pertinent to the issue.

Such legislation does not deprive equity of jurisdiction to compel discovery where such jurisdiction would be exercised before the statute, particularly where there is another ground of jurisdiction, to wit, account, as there is in this bill. A strict bill of discovery to obtain evidence to be used in an action at law, may be abrogated by implication, but even that is doubtful.

The jurisdiction in equity was established at a time when parties were incompetent as witnesses. Statutes rendering parties competent do not necessarily abrogate such jurisdiction.

It is said by the Supreme Court that "the rule is well recognized that where equity has jurisdiction and an act of the Legislature confers like jurisdiction on a court of law, it becomes concurrent in the two courts. * * * Unless there are prohibitory or restrictive words applied, the uniform interpretation is that they confer concurrent and not exclusive remedial authority." McNabb v. Heald, 41 Ill. 326.

It is expressly held in West Virginia, that a statute allowing a court of law to compel a discovery upon oath in answer to interrogatories filed wherever it would be compelled upon a bill of discovery, did not abolish bills of discovery or deprive courts of equity of that ancient jurisdiction. Russell v. Deckeschied, 24 W. Va. 61; See also Elliston v. Hughes, 1 Head (Tenn.), 225; Cannon v. McNabb, 48 Ala. 99; Millsaps v. Pfeiffer, 44 Miss. 805; Shortwell v. Smith, 20 N. J. Eq. 79.

The court erred in sustaining the demurrer and dismissing the bill, and the decree will be reversed and the case remanded for further proceedings.

*Reversed and remanded.*