## Garden City Sand Company v. People of the State of Illinois and New Amsterdam Casualty Company.

### Gen. No. 11,547.

1. DISCOVERY—*what does not deprive equity of jurisdiction to grant.* Section 9 of chapter 51 of the Statutes of Illinois providing for the production of books and writings containing evidence pertinent to the issue in an action at law does not deprive a court of equity of its inherent jurisdiction to grant discovery in a proper case in aid of an action at law.

2. COMMITMENT FOR CONTEMPT—*when proper in aid of bill for discovery.* A commitment for contempt is proper in aid of a bill seeking discovery in aid of an action at law where it appears that the remedy awarded by section 9 of chapter 51 of the Illinois Statutes providing for the production of books, etc., would not have been adequate in aid of such action.

Commitment for contempt. Appeal from the Superior Court of Cook County; the HON. JESSE HOLDOM, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1903. Affirmed. Opinion filed March 7, 1905.

**Statement by the Court.** This appeal presents for review an order of the Superior Court of Cook County, fining appellant and its officers, and committing the officers of appellant to jail for their refusal to obey an order of court, directing them to answer the bill of discovery brought against it by appellee, the New Amsterdam Casualty Company.

Appellee's bill of complaint charges, *inter alia*, that while it was engaged in the business of providing employers insurance against accidents, appellant on February 22, 1900, and again on February 22, 1901, applied to appellee for a policy of insurance against loss on account of bodily injuries suffered by employees of appellant, while on duty and engaged in certain occupations at West St. Charles, Illinois; that in pursuance of such applications, policies of insurance were issued by appellee to appellant, embracing all of appellant's employees at West St. Charles, Illinois, except executive officers and men; that the first of said

policies extended from February 22, 1900, to February 22, 1901, and the second from February 22, 1901, to February 22, 1902; that the amount of premiums to be paid by appellant under said policies was predicated upon the wages paid to employees of appellant during said periods; that appellant, at the time of the issuance of the policies respectively, stated to appellee that the estimated wages to be paid to the employees of appellant for the terms, respectively, of said policies was $5,000; that it was provided in the policies that the premiums to be paid by appellant should be based upon the wages to be expended by appellant during said periods, and if the wages so paid should exceed $5,000, then appellant should pay appellee the additional premium earned, but if less than $5,000 should be paid in wages, appellee should return to appellant the unearned premium *pro rata*.

The bill further shows that appellant paid a premium of $75 upon each of the policies, but that the premiums were determined, and payments thereof were made, upon the estimated wages of $5,000 for each year; that that amount was merely an estimate and was not an accurate or correct statement of the amount paid for wages to its employees during the said respective periods, and that the wages actually paid by appellant during said period of two years exceeded the sum of $5,000 annually, and appellant became and was indebted to appellee for such additional premium earned, by reason of the amount of wages paid its employees each year in excess of the sum of $5,000.

The bill further alleges that it was provided in each of the policies that appellee should have the right, at all reasonable times, to examine the books of appellant so far as they related to the wages paid by appellant to its employees, and that appellant, if requested, would furnish appellee with a written statement of the amount of wages expended during any part of the policy period, under oath, if required; that appellee had on divers occasions demanded of appellant that it furnish appellee with a written statement of the amount of wages expended during the two

years which the policies were in force, and that appellant submit its books, so far as they related to the wages paid to its employees during the period covered by the policies, to inspection by appellee, or some accountant designated by appellee, but that appellant has on all occasions declined and refused to furnish such statement, or to submit its books for examination.

The bill avers that appellee had instituted a suit in the same court, in assumpsit, to recover the amount of whatever premiums were found to be due and owing from appellant to appellee, that the action was still pending, and that the evidence wherewith to maintain the action rested exclusively with appellant, and appellee had no means of ascertaining the amount due and owing for earned premiums under the policies, save from the books of appellant.

The bill prays for discovery and an answer under oath, and requests answers to specific interrogatories contained in the bill, which relate to information as to the number of employees engaged by appellant at West St. Charles, Illinois, during the terms of the policies, the amounts paid to such employees, and calling for copies of the books of appellant showing such facts. By an amendment to the bill it was shown that Connell B. Schefler was president and Napoleon C. Fisher was secretary of appellant.

The bill of complaint was duly sworn to.

Appellant filed a general and special demurrer to the amended bill, in which it is claimed that appellee has an adequate remedy at law for all the relief sought, by compelling appellant to produce its books, through a subpœna duces tecum.

The demurrer was overruled and appellant was ordered to plead or answer to the bill as amended.

Appellant and its officers declined in open court to obey the order of the court, and failing to show cause why it should not obey the order of court, it was adjudged to be in contempt, and it and its officers were each fined $5 and ordered to stand committed until they should comply, or until they should be otherwise released in due course of

law, or until the lapse of ten days from the time of their incarceration.

This appeal is prosecuted from the order of the court adjudging appellant in contempt, etc.

EDWIN C. CRAWFORD, for appellant.

MOSES, ROSENTHAL & KENNEDY, for appellees.

MR. JUSTICE SMITH delivered the opinion of the court.

Appellee does not question the right of appellant to prosecute an appeal from the order in question, as contended for by appellant. The only question, then, presented by the record which we need consider, is, did the .Superior Court have jurisdiction to compel, by a bill in equity, the discovery from appellant as prayed in the bill? Appellant contends that section 9, chapter 51, Hurd's Illinois Statutes, provides the means whereby appellee could obtain the needed evidence in the suit at law, and therefore a court of equity has no jurisdiction, and the demurrer to the bill should have been sustained.

Contemporaneously with the adoption of section 9, chapter 51, Hurd's Revised Statutes, providing for the production of books and writings containing evidence pertinent to the issue in any action at law, the legislature adopted sections 1 and 20 of the Chancery Act (secs. 1 and 20, chapter 22, Hurd's Revised Statutes) governing proceedings in equity. It does not appear from these provisions of the statutes or any other provisions, to which our attention has been directed, that the legislature ·has abolished or even limited the inherent jurisdiction of equity courts to grant relief by way of bills of discovery. Unless there is some legislation to be found, and we know of none, expressly or by necessary implication abolishing bills of discovery, the well-recognized jurisdiction of equity courts to grant such relief must be held as continuing, and as concurrent with the jurisdiction of courts at law, conferred by section 9 of the Evidence Act. 1 Story's Eq., sec. 80; Pomeroy's Eq., secs. 193, 279; Bispham, sec. 10.

In Grimes v. Hilliary, 38 Ill. App. 246, a bill for discovery was filed and a demurrer was interposed and overruled, and an order entered requiring the defendant to answer. The defendant abided by his demurrer and declined to answer and took his appeal. The court say: "The statutory provisions referred to (sec. 81, chap. 3, and sec. 20, chap. 22 of R. S.) contain no words prohibitory or restrictive of the original power of the courts of equity; and while there may be many cases in which these concurrent and cumulative remedies would be the more convenient, there may be many, also, in which the plaintiff would wisely prefer not to depend upon testimony of his adversary before a jury for proof of any thing, or to use him for formal proof, and yet not venture to ask him about the merits, or to risk the necessity of trying to impeach one whom he had himself offered as a witness for any purpose. We think these remedies did not bar the relief sought in equity." The language of the court, we think, is as applicable to section 9 of the Evidence Act as to the provisions referred to in the opinion. The case further holds upon the broad jurisdictional question here involved that where courts of equity originally had jurisdiction over a subject-matter, that jurisdiction is never overturned or impaired by a similar jurisdiction conferred upon courts of law, in the absence of prohibitory or restrictive words.

This court in Kendallville Refrigerator Co. v. Davis, 40 Ill. App. 616, passed upon the precise jurisdictional question here involved, and we regard the reasoning of the court and the authorities cited in the opinion as applicable to this case, and as decisive of the question of jurisdiction now before us. See also Shotwell's Adm'r., v. Smith, 20 N. J. Eq. 79; Miller v. U. S. Casualty Co., 61 N. J. Eq. 110 (47 Atl. Rep. 509); Union Pass. R. R. Co. v. City of Baltimore, 71 Md. 238; Indianapolis Gas Co. v. City of Indianapolis, 90 Fed. Rep. 196. If we are correct in the conclusion thus expressed upon the general question of jurisdiction, it necessarily follows that this bill is properly brought, and the Superior Court had jurisdiction to enforce

its order to plead or answer, unless the remedy provided by section 9 of the Evidence Act is as full, complete and adequate in this case as the remedy by bill of discovery.

In County of Cook v. Davis, 143 Ill. 154, it is said: "Where a court of law is competent to afford an adequate and ample remedy, courts of equity will remit the parties to the courts of law, where the right of trial by jury is secured to them.   In such cases either party has a right to demand that the matter of the defendant's liability be submitted to a jury according to the course of the common law, and unless some special and substantial ground of equity jurisdiction be alleged, and, if necessary, proved, such as that a lien exists for the money demanded which cannot be adequately enforced at law, or that discovery is necessary to a recovery by complainant, as other like equitable considerations affecting the adequacy of the remedy at law, courts of equity will decline to interfere.   These principles are familiar to every lawyer and have frequently received approval in this court.   Taylor v. Turner, 87 Ill. 296; Victor Scale Co. v. Shurtleff, 81 id. 313; Gore v. Kramer, 117 id. 176; Buzard v. Houston, 119 U. S. 347; Russell v. Clark, 7 Cranch, 69."

Is the remedy then under section 9 of the Evidence Act complete and adequate?   Appellant contends that it is. This section was construed by our Supreme Court in Lester v. The People, 150 Ill. 408.   It was held in that case that it contemplates the production of books and papers as evidence of the case, but not for inspection of the plaintiff out of court, or for the purpose of preparing the case for trial, or for taking copies of entries in the books of appellant before trial.

In considering the question of the completeness of the remedy under this section, as applied to this case, it must be carried in mind that by the terms of the contract between appellant and appellee, the latter has the right, not only to examine the books of appellant at all reasonable times for the particular purpose set forth in the bill, but that appellant should furnish written statements of the amount of wages

expended during any part of the policy period under oath. It cannot be claimed that the statute in question authorizes anything of that kind; nor can it be claimed that it furnishes any remedy for the enforcement of the contractual rights given by appellant to appellee, under and by virtue of the contracts between them, relating to the examination of books and entries by appellee at all reasonable times, and the making by appellant of sworn statements of the amounts paid for wages during any part of the policy periods. In these substantial and important particulars the statute confers no power upon a court of law. While it may afford an ample remedy in many cases, it falls far short of enabling a court of law to give to appellee the opportunities to examine the books of appellant, and the sworn statements of the officers or agents of appellant, to which appellee has a right in this case, under its contract with appellant. A court of law cannot give to appellee, under this, or any other provision of the statute, the knowledge of the officers of appellant relative to the amounts paid by appellant for wages during the periods covered by the policies, in advance of the actual trial of the case before the court. This is too clear to admit of argument.

We cannot escape the conclusion that the remedy afforded under this section is inadequate to meet the circumstances of this case, and that the Superior Court had jurisdiction of the parties and the subject-matter of the bill, and that its order overruling the demurrer and fining and committing appellant for its refusal to answer, was right.

The order of the Superior Court is affirmed.

*Affirmed.*