**George G. Brandenburg and Joseph I. Brandenburg, trading as Brandenburg & Company, Appellees, v. The Buda Company, Appellant.**

**Gen. No. 25,156.**

1. DISCOVERY, § 2*—*what is effect of statute as to discovery.* Section 9 of the Evidence Act (Hurd's Rev. St. ch. 51, J. & A. ¶ 5526), authorizing the courts to require the parties to produce books or writings in pending actions, does not abolish or limit the jurisdiction of chancery courts as to pure bills of discovery, but only provides a concurrent remedy, the bill of discovery being a remedy superior to that afforded by a court of law under such statute.

2. DISCOVERY, § 5*—*what objections to bill are not available.* On a pure bill for discovery of certain matters in aid of complain-ants' suit at law theretofore brought against defendant on a con-tract, the court will not sustain as applicable thereto under facts here appearing contentions of defendant that the bill cannot be

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Brandenburg et al. v. The Buda Co., 218 Ill. App. 542.

maintained because the suit is prematurely brought, or because the contract gives complainants the right to examine defendant's books at stated intervals, or because complainants may not ask questions of which they have knowledge themselves, or because questions are asked concerning matters, the knowledge of which is in the possession of third persons, who can be produced at the trial as witnesses.

3. DISCOVERY, § 6*—*what must be shown in order that discovery may be granted.* On a bill for discovery of certain matters in aid of their suit at law theretofore brought against defendant, complainants must show by their bill that they have a good cause of action at law.

4. DISCOVERY, § 6*—*when relief will be denied.* Where, on a bill for discovery of certain matters in aid of complainants' action at law theretofore brought against defendant, it affirmatively appears that complainants have no case in the law action set up by them therein, the relief asked should not be granted.

5. DISCOVERY, § 6*—*what will not be determined as to law action.* Where, on a bill seeking discovery of certain matters in aid of complainants' action at law on a contract theretofore brought by them against defendant, it does not appear that the action at law is clearly unmaintainable but such question involves construction of the contract and is not free from doubt, it will be left for the decision of the court of law in which such action is pending, and discovery will not be denied on the ground that the action is not maintainable.

BARNES, J., dissenting on motion to modify judgment of affirmance.

Appeal from the Circuit Court of Cook county; the Hon. FREDERICK A. SMITH, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1919. Affirmed. Opinion filed July 14, 1920. Rehearing denied and a dissenting opinion filed July 30, 1920.

JONES, ADDINGTON, AMES & SEIBOLD, for appellant; KEENE H. ADDINGTON and WALTER HAMILTON, of counsel.

JOHN T. RICHARDS, for appellees.

MR. JUSTICE MATCHETT delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

The appellees are members of the partnership of Brandenburg & Company. They filed their bill in equity against appellant, The Buda Company, a corporation, for discovery of certain matters in aid of their suit at law theretofore brought by them against this corporation.

The bill alleges the execution by the parties of a written contract on October 19, 1911, which it sets out *in hæc verba,* and by which appellees were made exclusive selling agents of appellant's motor vehicle products in the United States for a compensation expressed in the contract.

The 13th paragraph provides:

"It is further covenanted and agreed that at the end of a period of every three months, dating from the date of this contract, the parties of the second part shall have the right to examine the books of the party of the first part for the purpose only of ascertaining the amount of shipments made by the party of the first part, and for the purpose only of checking up and verifying statements rendered by the party of the first part to the parties of the second part hereto."

The 15th paragraph provides:

"It is further covenanted and agreed by and between the parties hereto, that this contract shall take effect from its date, and shall continue to July 1st, 1916, and from year to year thereafter, unless either party may wish to terminate this contract, which may be done on any year thereafter, by giving the other party a notice in writing of their intention to so terminate this agreement sixty days prior to July 1st of any year thereafter. Said cancellation to take effect provided all payments are made sixty days after date of cancellation."

By other paragraphs it was provided that if members of the partnership should for any reason cease to be actually engaged in the sale of motor vehicle products, the corporation should have the right to cancel the agreement, after giving 90 days' notice in

advance of the date of such cancellation, and that if either of the parties became insolvent, the contract might be terminated as soon as all payments thereunder should have been made. The bill alleges full performance by the partnership of the terms of the contract, but charges that on April 21, 1916, the following notice was served on them:

"Chicago, April 21, 1916.
"To George G. Brandenburg and
   Joseph I. Brandenburg, copartners,
      doing business as Brandenburg & Company.
            Chicago, Ill.
               NOTICE.

"You are hereby notified that the contract of date October 19, 1911, by and between yourselves as parties of the second part and The Buda Company, an Illinois corporation of the City of Harvey, Illinois, as party of the first part, having to do with commissions to you on shipments by us of parts for motor vehicles, is hereby terminated by us, said termination to take effect on the expiration of the five year period of said contract on July 1, 1916.

The Buda Company,
By James Viles, President."

The bill also says that after July 1, 1916, defendant refused to carry out its contract, and that, by reason thereof, complainants, on January 2, 1917, instituted in the circuit court of Cook county, Illinois, a certain action in assumpsit, to recover from the defendant the amount of their damages, $250,000, suffered by reason of the failure and refusal of the defendant to carry out and perform said contract on its part; that said action of assumpsit is still pending and undetermined.

The bill further alleges that material facts necessary to the maintenance of this suit can be obtained only from examination of defendant's books of account, etc. It prays discovery may be made and propounds certain interrogatories which it prays may

be answered by complainants' solicitor. The bill is sworn to and duly signed by complainants' solicitor.

To this bill defendant-appellant filed a general demurrer and afterwards a special demurrer, both of which were by the court overruled, and a decree entered, directing defendant to answer the interrogatories within 10 days. From that decree this appeal is prosecuted.

It is to be noticed that the bill is one for discovery only. It does not seek to have the merits of the suit at law passed on by the chancery court. It does not ask the court of chancery to give any relief, other than the defendant "The Buda Company, may make full, true and complete discovery of the several matters aforesaid, to the end that your orators may be better enabled to maintain their said action in assumpsit, so instituted by them in the Circuit Court of Cook County, Illinois, against said The Buda Company."

It is the contention of appellant that the bill cannot be maintained for the reason that complainants have a full, adequate and complete remedy at law, to obtain all the information to which they are entitled, and it is specifically pointed out that the information asked for, if proper, is obtainable under section 9 of the Evidence Act (Hurd's Rev. St. ch. 51, p. 1306 (J. & A. ¶ 5526), which provides:

"The several courts shall have power, in any action pending before them, upon motion, and good and sufficient cause shown, and reasonable notice thereof given, to require the parties, or either of them, to produce books or writings in their possession or power which contain evidence pertinent to the issue."

In this connection we are cited to numerous cases construing this section in a liberal manner, and which seem to express the opinion that bills of discovery have been made unnecessary by its enactment. We are cited to *Hartford Fire Ins. Co. v. Ledford,* 151 Ill. App. 413, where the opinion says: "Where the evidence

desired can be had on notice, there is no need of a bill of discovery, and this bill in equity will not lie for discovery''; to *Swedish-American Tel. Co. v. Fidelity & Casualty Co. of New York,* 208 Ill. 562, where considering an appeal from an order entered under said section 9 compelling the production of books by a party to a suit at law, the court said: ''Nor do we think that it was necessary to file a bill of discovery in order to secure an examination of the books''; to *Denison Cotton Mill Co. v. Schermerhorn,* 257 Ill. 128, where an order was sustained, requiring a party to permit an examination of evidence in his possession by his adversary, to prepare for trial.

In connection with these authorities appellant invokes the rule laid down in 3 Story's Equity Jurisprudence, sec. 1943, to the effect that ''courts of equity will not entertain a bill for discovery to assist a suit in another court, if the latter is, of itself, competent to grant the same relief; for in such a case the proper exercise of the jurisdiction should be left to the functionaries of the court where the suit is depending.''

The leading authority for this last statement of law is *Gelston v. Hoyt,* 1 Johns. Ch. (N. Y.) 543, in which the opinion was delivered by Chancellor Kent in 1815. This case was followed in the later case of. *Leggett v. Postley,* 2 Paige (N. Y.) 599, in 1831, but in the later case of *Marsh v. Davison,* 9 Paige (N. Y.) 580, decided by Chancellor Walworth in 1842, the limitations of the doctrine were stated:

''It is not necessary in a mere bill for discovery for the complainant to aver that he cannot otherwise establish his defense at law, and the headnote to the contrary in the case of *Leggett v. Postley,* 2 Paige (N. Y.) 599, is not warranted by the opinion of the court in that respect.

''By referring to the case itself it will be seen that the court made a distinction between a mere bill of discovery and a bill in which the complainant asks for

relief in this court upon the ground that he has been compelled to come here for discovery.''

The citation of cases and arguments of appellant ignore this vital distinction. Every bill in equity is, in one sense, a bill for discovery, since it always calls for an answer, and it is therefore clear that in cases where discovery and other relief are prayed for, the bill, if sustained, may have the effect of ousting the common-law jurisdiction, because equity having once acquired jurisdiction will generally retain it for the purpose of doing complete justice between the parties. Indeed the common-law judges of England at one time joined in a protest against the extent to which their courts were ousted of jurisdiction in this manner.

It is true that in some States, particularly in those which have adopted the so-called reformed procedure, by which all distinctions between law and equity are abolished, it has been held that the effect of these statutes is to do away with bills of discovery, but such legislation has not been enacted in this State.

In the absence of this or some similar enactment expressing the intention of the legislature to accomplish that result, it seems reasonable to hold that section 9 does not abolish or limit the jurisdiction of chancery courts as to pure bills of discovery, but only provides a concurrent remedy. This has been the construction in this State of this and other statutes transferring to courts of law jurisdiction formerly exercised exclusively by courts of chancery. *Grimes v. Hilliary,* 38 Ill. App. 246; *Kendallville Refrigerator Co. v. Davis,* 40 Ill. App. 616; *Garden City Sand Co. v. People,* 118 Ill. App. 372; *Rickly v. Parlin & Orendorff Co.,* 206 Ill. App. 599; *Howell v. Moores,* 127 Ill. 79.

As is said in volume 1, 4th Edition of Pomeroy's Equity Jurisprudence, sec. 193 (after pointing out the effect of the so-called reformed procedure in England

and many of the American States in this respect):

"Notwithstanding these great changes made by statutes which seem to remove the very foundation for any interposition by equity, it has generally been held that the legislature has not abridged nor affected the auxiliary equitable jurisdiction to entertain suits for mere discovery of evidence and production of documents, and that such equitable jurisdiction still exists where not expressly abolished by the statutes. This conclusion, however, is not universal. In some cases it has been held that the legislation, by abolishing all the grounds upon which a suit for discovery was based, has necessarily abrogated the jurisdiction itself."

As authority made for the statement in the last sentence quoted, the author cites *Riopelle v. Doellner*, 26 Mich. 102, one of the cases upon which the appellant relies.

We think a pure bill for discovery provides a remedy superior to any which a court of law affords under the statute in question, *Continental Nat. Bank v. Heilman*, 66 Fed. 184; *Indianapolis Gas Co. v. City of Indianapolis*, 90 Fed. 196, and that the jurisdiction of chancery courts to give this relief has not been limited in this State.

The further contentions of appellant that this suit cannot be maintained because prematurely brought, or because the contract gives appellees the right to examine the books of appellant at stated intervals, or because complainants may not ask questions of which they have knowledge themselves, or because questions are asked concerning matters, the knowledge of which is in the possession of third parties, who can be produced at the trial as witnesses, cannot, we think, be sustained as applicable to a pure bill of discovery. *Marsh v. Davison*, 9 Paige (N. Y.) 580; *Earl of Glengal v. Frazer*, 2 Hare 99; *Brereton v. Gamul*, 2 Atk. 240; *Montague v. Dudman*, 2 Ves. 397; *Peck v. Ashley*, 12 Metc. (Mass.) 478. The cases cited to the con-

trary by appellant are distinguished by the fact that the complainants in them sought to invoke general chancery jurisdiction for relief.

But appellant says, and truly, that it was necessary for complainants to show by their bill that they had a good cause of action at law. In Story's Equity Jurisprudence (14th Ed.), vol. 3, sec. 1941, the rule is stated:

"In the next place the party must not only show that he has an interest in the subject-matter of the bill to which the required discovery relates, but he must also state a case which will, if he is the plaintiff at law, constitute a good ground of action, or, if he is the defendant at law, show a good ground of defense in aid of which the discovery is sought. If it is clear that the action or the defense is unmaintainable at law, courts of equity will not entertain a bill for any discovery in support of it, since the discovery could not be material, but must be useless. This, however, is so delicate a function, that courts of equity will not undertake to refuse a discovery upon such grounds, unless the case is entirely free from doubt. If the point be fairly open to doubt or controversy, courts of equity will grant the discovery and leave it to courts of law to adjudicate upon the legal rights of the party seeking the discovery."

It is the contention of appellant that it affirmatively appears complainants in the bill have no case in the law suit set up by them therein. If this is clearly so, complainants should not be granted the relief asked for, for the plain reason that in such case the questions asked would be wholly immaterial. It is the theory of appellant that under the provisions of paragraph 15 of the contract, it had a perfect right to terminate the contract on July 1, 1916, by the written notice served on April 21, 1916, which was more than 60 days prior to that date; that properly construed, the contract was "to" July 1, 1916, "certainly," and that beyond that time its duration is uncertain. Appellees contend that under the plain terms

of that section, the contract could not be terminated prior to July, 1, 1917. If appellant's construction of this paragraph is correct, then the termination of the contract was not wrongful, and appellees could not have any cause of action on that ground. If appellees' construction is correct, then the termination of the contract was wrongful, and action for damages would lie.

The parties cite cases in support of their respective contentions, which, while interesting, are hardly conclusive. Appellant cites *Mayo, Hysore & Co. v. Philadelphia Textile Machinery Co.,* 105 Va. 486; *Tilling, Ltd. v. James,* 94 Law T. Rep. 823; *Brown v. Symons,* 98 E. C. L. 208; *Langton v. Carleton,* 29 Law T. Rep. 650; *Hamilton v. Bryant,* 30 Law T. Rep. 408. It also contends that appellees' construction of the contract is based on the latter clause of the paragraph and is inconsistent with the first clause of it, and that the first clause should therefore prevail. Citing *Straus v. Wanamaker,* 175 Pa. St. 213; *Pittsburg & S. R. Co. v. Central Trust Co.,* 156 N. Y. App. Div. 182, 141 N. Y. Supp. 66; *Employers' Liability Assur. Corp., Ltd. v. Morrow,* 143 Fed. 750.

As against these contentions, appellees claim the clauses are not inconsistent, and point to the nature of the business which was to be conducted, and other provisions of the contract, which, it is claimed, indicate the intention of the parties that the contract should remain in force as long as the parties continued actively engaged in the business; to the contemporaneous construction of the paragraph as indicated by the notice given, that it was to end at the expiration of the 5-year period, which could not have been July 1, 1916; and to the clear grammatical construction of the paragraph. As authorities they cite *Regina v. Chawton,* L. R. 1 Q. B. 523; *Doe d. Chadbourn v. Green,* 9 A. & E. 658; *Sir Herbert Marshall*

*& Sons v. John Brinsmead & Sons,* 106 Law T. Rep. 460.

We have read all these cases carefully. Upon consideration of the whole matter we are of the opinion the only certain thing about said paragraph 15 is that it is ambiguous and uncertain. The question raised is not only delicate but difficult. Clearly, we cannot say that the construction contended for by appellant is free from doubt in face of the fact that in some of the cases cited in support of its contention the courts, apparently, are not quite sure of the correctness of the position taken.

This is a court of errors. The question to be decided is whether within the rule as first stated the suit of complainants is clearly and without doubt unmaintainable at law. We think we must say, at least, the question is not free from doubt, and that the chancellor, therefore, properly left the decision of that question to the court of law, in which complainants' action for the alleged breach of contract is pending. It follows that the decree of the chancellor should be affirmed.

*Affirmed.*

MR. PRESIDING JUSTICE BARNES and MR. JUSTICE GRIDLEY concur.

DISSENTING OPINION OF MR. PRESIDING JUSTICE BARNES ON PETITION FOR REHEARING.

Appellant has filed a petition for rehearing asking in effect that the judgment of affirmance be modified in conformity with the opinion so as to make clear that construction of the contract in question is still open to adjudication. A majority of the court think the motion should be denied. If the form of the judgment is open to the contention that an unqualified affirmance of the decree upholds appellees' construction of the contract, then holding a contrary view I think the judgment here should be one of reversal.