### Forster, Waterbury & Co. v. Webster Manufacturing Co.

1. EQUITY—*Where the Court Has Jurisdiction to Entertain a Bill for an Accounting.*—A court of equity has jurisdiction to entertain a bill for an accounting where there are mutual accounts between the plaintiff and defendant, and also where the accounts are all on one side, but there are circumstances of great complication or difficulty in the way of adequate relief at law, and where, also, fiduciary relations exist between the parties, and a duty rests upon the defendant to render an account.

2. SAME—*In Matters of Account Jurisdiction is Concurrent with Courts of Law.*—In respect to the consideration of matters of account the equitable jurisdiction of courts of equity is concurrent with that of courts of law, and no precise rule can be laid down as to the cases in which a court of equity will exercise its jurisdiction.

**Bill for an Accounting.**—Appeal from an interlocutory order of the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge presiding. Heard in the Branch Appellate Court at the October term, 1902, Affirmed. Opinion filed May 19, 1903.

In July, 1899, appellant and appellee entered into a written contract. By this the parties mutually undertook as follows:

1. That appellant should manufacture for and deliver to appellee certain large quantities of detachable malleable chain, known in the market as the Ewart style.

2. That appellee should furnish to appellant all grated brass patterns necessary to the manufacture of such chain, and that appellant should not manufacture any such chain for any other party or parties through the use of such patterns without the consent of appellee.

3. That deliveries of chain should be commenced about October 1st and continue until all orders of appellee were

filled, unless appellant was prevented by accident from the making of such deliveries.

The fifth paragraph of the contract is as follows:

" It is expressly understood and agreed that the price at which all chain manufactured by the party of the first part under this agreement, and delivered to the party of the second part, shall be ascertained and fixed in the following manner: The party of the first part shall ascertain the cost of chain each month by figuring the actual cost of the party of the first part, of the necessary raw material used for the production of one ton of each kind or size of chain manufactured during the preceding month, together with the actual cost of labor in producing each ton of chain, plus ordinary and regular expenses of the business, as may be covered by the salaries of the officers and ordinary expenses which should be properly charged to each and every ton of said chain produced. (Depreciation of the plant or interest on the cost of the plant shall not be in any manner considered as expenses and chargeable to the cost of said chain.) To the total sum per ton thus ascertained as aforesaid, there shall be added the further sum of twenty (20) dollars as profit, and this total sum shall be the price at which the said party of the first part shall bill and charge the Webster Manufacturing Company for chain delivered to them the preceding month. As soon as the said cost is ascertained in the manner aforesaid, the party of the first part shall submit same to the party of the second part, each and every month, if requested."

5. That appellant would not sell chain to customers of appellee while such customers were being supplied by it, except in certain contingencies.

6. That appellee should place orders for the manufacture and delivery of such chain as follows: On the 1st day of October, 1899, an order for not less than 750 nor more than 1,000 tons; on October 1, 1900, and each year thereafter during the life of the contract, orders for not less than 500 nor more than 1,000 tons per year.

Appellant manufactured for and delivered to appellee various quantities of chain and continued such deliveries down to about September, 1901, at which time appellee gave to appellant the following notice:

" We give you, enclosed, a list of the dates and numbers

Forster, Waterbury & Co. v. Webster Mfg. Co.

of the various orders for chain which we have sent you, from time to time, within the last three or four months. We have to advise you now, that unless these orders are filled not later than Monday, the 16th of September, that we shall have to go into the market and purchase this chain."

The defendant claims that at this time chain had been delivered by appellant to appellee to the value of about $62,975.54; and appellant had on hand, manufactured for appellee but not yet delivered, chain to the value of about $8,641.75.

In October, 1901, appellant commenced an action against appellee in the Circuit Court of Cook County for the purpose of recovering :

(a) The value and purchase price of the chain actually delivered;

(b) The value of the chain manufactured for, and tendered to, but refused by appellee;

(c) Damages arising from loss of profits on the difference in quantity between the minimum amounts provided by the contract and that actually ordered by appellee.

In June, 1902, appellee filed its bill of complaint asking that the action at law be enjoined and that an accounting be taken in equity of the transactions between the parties under said contract, and on October 16, 1902, an order was entered directing an injunction to issue in accordance with the prayer of the bill; from which order this appeal is taken.

The bill, among other things, charges:

" That said contract contemplated about fifteen different sizes and weights of chain, and attachments going with same, amounting in number to about sixty; that during the entire period of continuance of said contract from October, 1899, until September, 1901, complainant continued to give numerous orders for a large amount of chains and attachments, under said contract; that said orders were partially filled by defendant from time to time; that at no time during the continuance of said contract were orders of complainant entirely filled;   *   *   *   that in the course of transactions between complainant and defendant, several hundred different orders for chains and attach-

ments were given by complainant to defendant; that most of the orders were partly filled and shipments made thereon; that the chains manufactured by defendant for complainant pursuant to said contract consisted of fifteen different sizes or numbers, and of sixty different attachments for said chains, each of which sizes and numbers was adapted for special and particular uses and purposes, and each of which sizes and numbers varied in amount of material required for the manufacture thereof, and also in the amount of labor required in producing and handling same; that in the process of manufacture of said chains and attachments they passed through numerous processes, and in order to ascertain the actual cost of each of said chains per ton, it is necessary to keep an accurate account of the cost of each process; entering into the direct cost of said chains is the cost of the iron used in the manufacture of same, also of molding sand, coal, cores, foundry labor on castings, yard labor, rattling, chipping, sorting, annealing, tumbling, finishing and shipping; that there would also enter into the determination of the cost of said chains various other items and elements which can be ascertained only by an accurate accounting of the entire business done by said complainant."

The bill also sets forth that pursuant to the terms of the contract, complainant paid for certain patterns which were manufactured under the direction of the defendant, which patterns should belong to the complainant; that contrary to their agreement in that behalf, defendant has caused to be manufactured malleable iron chains from said patterns and sold to other parties, and prays for an accounting of the amount of chain sold under said patterns; that the defendant may be required to make discovery and show in detail the amount of chain manufactured by it and sold to other persons from said patterns of complainant, and also the persons to whom it sold such goods, and for general relief.

The bill charges:

"That defendant has at no time furnished complainant a computation or schedule of the actual cost of said chains and attachments manufactured under said contract, but on the contrary, has entirely failed, neglected and refused so to do, although complainant has frequently demanded of defendant a detailed statement."

DEFREES, BRACE & RITTER, attorneys for appellant.

HERRICK, ALLEN, BOYESEN & MARTIN, and GEORGE N. STONE, attorneys for appellee.

Equity has jurisdiction to entertain a bill for an accounting where there are mutual accounts between the plaintiff and the defendant; that is, where each of the two parties has received and paid on account of the other.

Also where the accounts are all on one side, but there are circumstances of great complication or difficulty in the way of adequate relief at law.    3 Pomeroy Eq. Jurisp., Sec. 1421; Craig v. McKinney, 72 Ill. 306; Patten v. Patten, 75 Ill. 446; Selz v. Buel, 105 Ill. 122; Channon v. Stewart, 103 Ill. 541; James T. Hair Co. v. Daily, 161 Ill. 379; Gleason & Bailey Mfg. Co. v. Hoffman, 168 Ill. 25; Ely v. Crane, 37 N. J. Eq. 158; Seymour v. Long Dock Co., 20 N. J. Eq. 396.

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

A court of equity has jurisdiction to entertain a bill for an accounting where there are mutual accounts between the plaintiff and defendant and also where the accounts are all on one side, but there are circumstances of great complication or difficulty in the way of adequate relief at law and where also fiduciary relations exist between the parties and a duty rests upon the defendant to render an account.    3d Pomeroy's Eq. Jurisprudence, Sec. 1421; Gleason & Bailey Mfg. Co. v. Hoffman, 168 Ill. 25–28.

Where an account is so complicated that a court of law would be incompetent to examine it with necessary accuracy upon a trial at *nisi prius*, a court of equity will take jurisdiction; because it has facilities for examining and intelligently finding as to a complicated account, involving the consideration, not only of many different items, but many different subjects, concerning which it is necessary to take the testimony of many witnesses in order to determine what amount should be properly charged or credited. Taff Vale Ry. Co. v. Nixon, 1st House of Lords Cases,

111–121; Mitchell v. Great Works Milling & Mfg. Co., 2d Story, 648–653.

In respect to the consideration of matters of account, the equitable jurisdiction of courts of equity is concurrent with that of courts of law, and no precise rule can be laid down as to the cases in which a court of equity will exercise its jurisdiction. A court reserves to itself a large discretion upon the subject and will refuse or reject the cognizance of cases of account as the circumstances of the particular case may render expedient. 1st Story's Eq. Jurisprudence, Sec. 451; Seymour v. Long Dock Co., 20 N. J. Eq. 396–407; Kerr on Injunctions, 58; Ely v. Crane, 37 N. J. Eq. 158.

In the present case it is quite manifest that a jury sitting in a *nisi prius* court could not examine with sufficient accuracy, so as to arrive at an intelligent conclusion, as to the accounts which the defendant should, from month to month, have rendered as to the manufacture of more than $70,000 worth of chain, consisting of fifteen different sizes or numbers and of sixty different attachments thereon, each of which sizes and numbers was adapted for special and particular uses and purposes, and each of which sizes and numbers varied in amount of material required for the manufacture thereof, and also in the amount of labor required in producing and handling the same, it being necessary in order to ascertain such actual cost to determine accurately the cost of each of the numerous processes through which the material used went in making such chains, such as molding, casting, yard labor, rattling, chipping, sorting, annealing, tumbling, finishing and shipping, as well as the cost of the various materials employed, such as iron, sand, coal, cores, etc.

In the manufacture of these chains, appellant occupied a fiduciary relation to appellee. It undertook to manufacture chains, charging appellee the actual cost of so doing with an addition thereto of $20 per ton for its profit or compensation. Under this arrangement it was bound to the use of all reasonable diligence and care to manufacture at the least cost. It was bound in the purchase and

Sup. Council Catholic K. & L. of America v. O'Neill.

use of materials, in the employment and payment of labor, to be economical, prudent and careful, not unnecessarily to increase the cost to appellee.    It became the agent of appellee to manufacture certain things for it, under an arrangement by which it could neither take nor make advantage or profit, save as to the extent of the stipulated $20 per ton allowed under the contract.    Had there been no direct provision that it should render an account of its doings in this regard each month, if requested, it would have been bound so to do at reasonable times.    It brought suit, leaving appellee in ignorance of the gross business done by it, appellant, for appellee and others, during the time these chains were manufactured and thus ignorant of what proportion of the ordinary and regular expenses of appellant's business for salaries of officers and other like expenses should be properly charged as a part of the cost of the manufacture of the said chains.

The decree of the Circuit Court enjoining the prosecution of appellant's suit is affirmed.