The Billboard Publishing Company, Appellee, v. F. C. McCarahan, Appellant.

## Gen. No. 14,896.

1. INJUNCTIONS—*what not considered upon appeal involving temporary.* In an appeal from an order of the court involving the propriety of a temporary injunction, the merits of the pending controversy will not be considered, as the same question cannot be pending in the trial and appellate courts at the same time.

2. INJUNCTIONS—*when refusal to dissolve not disturbed.* The action of the chancellor in denying a motion to dissolve will not be disturbed on review unless the sound discretion of such chancellor has been abused.

3. Accounting—*when equity will take jurisdiction.* If it is clear that the remedy at law is inadequate to a full and fair investigation of the accounts between the parties on the facts charged in the bill of complaint, equity will take jurisdiction.

4. Fraud—*when equity will take jurisdiction.* If conspiracy to defraud in connection with an accounting by one holding a fiduciary relation to the complainant is charged, equity will take jurisdiction.

Bill for injunction. Appeal from the Circuit Court of Cook county; the Hon. Oscar E. Heard, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Affirmed. Opinion filed July 9, 1909. Rehearing denied October 5, 1909.

J. S. McClure, for appellant.

Simmons, Mitchell & Irving, for appelle

Mr. Justice Smith delivered the opinion of the court.

This case comes to this court on an appeal from an order of the Circuit Court of Cook county overruling the motion of appellant to dissolve the temporary injunction granted whereby appellant was enjoined from prosecuting his suit in *assumpsit* on the law side of said court, or any other suit involving the same matters, against appellee.

Appellee, The Billboard Publishing Company, filed its bill in the Circuit Court against appellant, setting up that it is the owner and publisher of "The Billboard," a weekly newspaper devoted to the amusement profession, and in connection therewith prints and publishes advertisements by manufacturers of amusement devices of every character, booking agencies who provide employment for talent or make engagements for amusement productions. The paper, it is averred, has a circulation of 27,000 copies weekly, and circulates in every country where the English language is spoken. It has many subscribers and many thousands of advertisers use its columns.

Billboard Publishing Co. v. McCarahan, 151 Ill. App. 227.

The bill states that on or about May 1, 1907, it entered into an arrangement with F. C. McCarahan, by which he was appointed its Chicago representative to solicit advertising orders for the publication above referred to and transmit the same to the complainant in Cincinnati, Ohio, for acceptance, and to perform such other duties as were required in publishing such orders as were accepted by the complainant. He was to take charge of subscriptions and prepare a weekly news letter covering general advertisements of interest to readers of "The Billboard," and such editorial matter as might be from time to time directed by the complainant, and as compensation for such services the defendant was to be paid fifteen per centum on the amount of money received by the complainant, when the same should be paid by the advertiser on all orders for advertising accepted by the complainant and which should be fully executed or published during the term while the defendant was connected with the complainant as its Chicago representative. Such percentage was to be in full for all services performed by the defendant and out of which he was also to pay all the costs of maintenance, purveying, extension and further increasing of the efficacy of the Chicago office, and it was provided that said employment of the defendant should continue only so long as desired by the complainant and he should be notified of the termination of his service.

It was further averred that the defendant entered upon his employment on or about the first day of May, 1907, and continued therein until on or about the sixteenth day of November, 1907, when complainant notified him that his services would be no longer required, and he thereupon ceased to have any further connection with complainant and left its employ.

The bill is voluminous and sets up in great detail the complications of the accounts between the complainant and the defendant which arose during the progress of the employment. The complicated and

difficult nature of the accounts grows out of the large number of orders sent by the defendant to the complainant, based upon contracts made with customers for advertising. It is averred that there were 2400 orders made, bearing separate numbers, upon nearly 200 separate contracts, some of which were oral and others were in writing, amounting to $25,000 worth of advertising, and there are a large number of items upon which the complainant claims that discounts of varying percentages were agreed upon during the term of the agency of the defendant, and that claims for commissions on between eight hundred and a thousand items were made by the defendant. These items, or many of them, are specified and set out in the bill specifically.

The bill shows that the defendant was placed in charge of its Chicago office and was to pay the expenses thereof, that the stating of an account will require an examination of many thousands of orders for advertisements, of entries and receipts for money for advertisements and of contracts and orders providing for the different percentages of discount on the orders which were executed and published; that these accounts are scattered through many books, checks, correspondence and other documents; that numerous remittances were made to the defendant by checks and drafts; that he kept an account in a Chicago bank in which he deposited remittances from advertisers and money received from complainant against which he drew checks and made payments for alleged expenses which are averred in the bill not to be proper charges; that soon after the defendant was discharged the Chicago office which he had occupied was broken open and all the records there were abstracted, destroyed or stolen by some one unknown to the complainant; that the accounts generally are alleged to be complicated and that complainant is unable to make a defense in a court of law, and a court of law cannot properly examine into and give adequate relief; that an account-

ing will show that there is nothing due defendant, and complainant offers to pay whatever may be found to be due defendant upon an accounting.

It is further averred that the accounts are complicated because the defendant claims he is entitled to commissions on contracts and orders secured by his predecessor before his term of employment, and also on contracts or orders secured before the end of his employment, but which were not to be executed or published until after he ceased his employment with complainant.

The bill further alleges that the accounts are complicated and difficult of proof, for the reason that the entries made in complainant's books were made by a bookkeeper, one McGohan, who has since been discharged, and who, it is alleged, conspired with the defendant to make false entries and false statements; and it appears from the bill that said McGohan, the bookkeeper, entered into a conspiracy with the defendant to cheat and defraud complainant; that the collusion of complainant's bookkeeper with the defendant was without the knowledge of the complainant or any of its officers, and that upon its discovery the bookkeeper was immediately discharged by the complainant.

The bill avers that the bookkeeper issued two statements of the accounts between complainant and defendant and delivered them to the defendant on different dates, and that neither of said statements is correct.

The bill sets up that the defendant has brought suit in assumpsit against the complainant, in which action at law he seeks to recover the sum of $1475.13 on items and orders and transactions growing out of the contract between the complainant and the defendant set forth in the bill, and he also seeks to recover in the action at law a certain percentage on the amount of $10,384.04, made up of 801,000 different items or orders for advertising, and upon an equal number of

items of money alleged to have been received by the complainant from said advertisements and certain alleged disbursements and expenses in the transaction of the business. The prayer of the bill is that the defendant be required to answer, without oath, the averments of the bill and to make answer to certain interrogatories which are propounded in the bill, and that an accounting be had between the complainant and the defendant of the business and transactions of the defendant, and that the defendant be directed to pay the complainant what, if anything, shall appear upon such accounting to be due from him to the complainant, and that an injunction issue, restraining the defendant, his agents and attorneys, from prosecuting the suit at law or instituting or prosecuting any other suit at law against the complainant founded upon the matters and things in said suit at law set forth or any of the matters and things growing out of the transactions set forth in the complainant's bill of complaint.

The complainant's motion for a temporary restraining order was referred to a master in chancery, and upon the recommendation of the master it was ordered May 12, 1908, that a temporary injunction issue to stay the prosecution of the defendant's suit at law.

On May 29, 1908, the defendant filed a motion to dissolve the injunction, upon the following grounds: first, that there is no equity on the face of the bill; second, the material allegations of the bill are denied by the defendant's answer and the affidavits filed with the motion; and, third, that the suit pending on the law side of the court furnishes an adequate remedy for the adjustment of the difference between the parties.

On June 1, 1908, the defendant filed his answer and on June 29 an amendment to the bill was filed by leave of court and affidavits in support thereof were filed, and the defendant filed an answer thereto by leave, and a replication was filed.

The defendant in his answer admits entering into an arrangement with the complainant by which the defendant was appointed the Chicago representative of complainant to solicit advertising orders and contracts for complainant for said publication and perform such other duties as were required in publishing such orders as were accepted by complainant, and admits in substance the contract as stated in the bill in many particulars, and denying the contract in other particulars.

The defendant admits in his answer the volume of business transacted by him as set forth in the bill in substance.

The answer challenges the relief prayed for in the bill, denies that equity has any jurisdiction in the matter, and avers that a court of law is competent to settle the issues between the parties, denies that he entered into any conspiracy with the bookkeeper of the complainant to defraud complainant, and denies generally the right of the complainant to any relief.

The merits of the controversy are now before the Circuit Court for adjudication, and cannot possibly come before this court until that court has entered a final decree thereon. The same question cannot be pending for decision in this court and in the Circuit Court in the same case and at the same time. Elgin Lumber Co. v. Langman, 23 Ill. App. 250; Smith v. Chytraus, 152 Ill. 664; Elliott on Civil Procedure, sec. 541. The sole question, therefore, before us on this appeal is, whether the lower court erred in refusing to dissolve the injunction.

In our opinion the bill presents three grounds for equity jurisdiction: first, the intricate and involved state of accounts between the parties; second, the fiduciary relation of the defendant to the complainant whereby a duty rests upon the defendant to render a true and accurate account of the moneys and property in his hands as manager of complainant's busi-

ness at its Chicago office; and third, the fraud and mistake shown in the bill.

Regarding the first ground named, it is clear that the remedy at law is inadequate to the full and complete investigation of the accounts between the parties on the facts charged in the bill of complaint, and that justice requires the employment of methods of investigation peculiar to courts of equity. As held in Crown Coal & Tow Co. v. Thomas, 177 Ill. 534, 540: "Where the state of accounts between the parties is complicated and intricate, where the state of accounts between the parties is involved with third parties, where to do justice requires the employment of methods of investigation peculiar to courts of equity, and where it would be very difficult for a jury to unravel the numerous transactions, are conditions usually held to be sufficient to give a court of equity jurisdiction. The jurisdiction in equity does not, in such cases, depend upon the absence of a remedy at law, but upon its adequacy or practicability and upon the discretion of the court. This case is sufficiently involved, complicated and intricate to justify a court of equity in taking jurisdiction of it."

In Smith v. Bates Machine Co., 79 Ill. App. 519, 526, the court say: "The jurisdiction in equity attaches, unless the legal remedy, both in the respect to the final relief and the mode of obtaining it, is as efficient as the remedy which equity would afford under the same circumstances. Gormley v. Clark, 134 U. S. 338; Kilbourne v. Sunderland, 130 *id.* 505." See also Gleason & B. Mfg. Co. v. Hoffman, 168 Ill. 25.

It is clear, we think, that the subject-matter of the bill, if proven, establishes a fiduciary relation between the parties to the controversy, and that there exists a duty on the part of the defendant to render an account to the complainant which, according to the averments of the bill, the defendant has failed and refused to render. Equity has jurisdiction in all such cases. Gleason & B. Mfg. Co. v. Hoffman, *supra*; James T.

Hair Co. v. Daily, 161 Ill. 379; Bispham's Equity, 7 Ed., sec. 237, p. 362.

The bill alleges positively and with sufficient circumstances and details that the defendant, appellant, conspired with McGohan, complainant's bookkeeper, to obtain commissions not provided for in the contract between complainant and defendant; and that by the aid of McGohan, who made false and untrue statements, defendant was enabled by means of the statements so made out to collect commissions to which he was not entitled under his contract. This, if true, was a fraud upon complainant.

It is said in 1 Storey's Equity Jurisprudence, pr. 187: "Fraud, indeed, in the sense of a court of equity, properly includes all acts, omissions and concealments which involve a breach of legal or equitable duty, trust or confidence, justly imposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another." We think the facts set out in the bill come within this definition, and if proven, complainant will be entitled to relief in this case.

The injunction in this case is merely ancillary. It merely restrains suits at law based upon the matters embraced in the bill. The action of the learned chancellor in denying the motion to dissolve the injunction will not be disturbed by this court unless the sound discretion of the court below has been abused. Pfohl v. Sampson et al., 59 N. Y. 174; Buffington v. Harvey, 95 U. S. 99. Upon the averments of the bill and the proofs in the record in support thereof, we find no error in refusing to dissolve the injunction. The order is affirmed.

*Affirmed.*

Mr. Justice MACK took no part in the consideration of this case.