# George M. Mayr, Appellee, v. Nelson Chesman & Company, Appellant.

## Gen. No. 21,784.

1. FRAUD, § 72*—*when bill sufficiently alleges.* In a bill praying an accounting on the ground of fraud, averments of the bill *held* sufficient to show fraud.

2. ACCOUNT, § 19*—*when equity jurisdiction of bill for accounting.* In a bill praying an accounting where evidence was taken by a master on complainant's motion for a preliminary injunction, bill and evidence *held* to show that the accounts in question are numerous and complicated sufficiently to give jurisdiction thereof to a court of equity.

3. ACCOUNT, § 19*—*when equity jurisdiction of bill of accounting.* Courts of equity have jurisdiction to compel an accounting, although there be an adequate remedy at law, where fiduciary relations exist between the parties, or where fraud is charged or where discovery is sought.

4. FRAUD, § 55*—*when equity jurisdiction on ground of fraud.* Fraud is one of the broadest grounds giving jurisdiction to a court of equity, and where fraud exists the aggrieved party is not bound to resort to another tribunal, possessed of less power and appliances to ascertain the truth and grant relief, although another tribunal may also have jurisdiction.

5. ACCOUNT, § 19*—*when equity jurisdiction of bill for accounting.* The conditions usually held sufficient to give a court of equity jurisdiction to entertain a bill for an accounting are where the accounts in question are complicated or intricate, or are involved with third parties, or where the methods of investigation peculiar to a court of equity are needed, or where it would be difficult for a jury to unravel the numerous transactions involved.

6. ACCOUNT, § 19*—*when equity jurisdiction of bill for accounting.* The jurisdiction of a court of equity to entertain a bill for an accounting depends not on the absence of any remedy at law, but upon the adequacy and practicability of such remedy and upon the discretion of the court.

7. ACCOUNT, § 19*—*when equity will exercise concurrent jurisdiction of bill for accounting.* In regard to questions of accounts, the jurisdiction of courts of equity is concurrent with that of courts of law, and no precise rule can be laid down as to when a court of equity will exercise such jurisdiction, such court reserving to itself a large discretion, and refusing to take such jurisdiction according to the circumstances of the particular case.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

8. INJUNCTION, § 16*—*when equity will enjoin suit at law.* Where a bill prays an accounting and it appears that at the time the bill is filed an action is pending at law involving the matters in regard to which the accounting is sought, an interlocutory decree restraining the further prosecution of such action at law is proper, for the reason that such an injunction is warranted when for any reason a court of equity is a more suitable tribunal for the determination of the matter, or where equitable remedies, unavailable at law, are required.

9. ACCOUNT, § 19*—*when equity jurisdiction of bill for accounting.* Where a bill prays an accounting, and it appears that when the bill was filed an action at law was pending involving the matters as to which the bill prays an accounting, the fact that under section 68 of the Practice act (J. & A. ¶ 8605), relating to matters of accounts, and Hurd's Rev. St., ch. 51, sec. 9 (J. & A. ¶ 5526), relating to the production of books and writings, a court of law has every facility possessed by a court of equity for the conduct of an accounting, does not operate to oust the long recognized jurisdiction of a court of equity in matters of account.

10. ACCOUNT, § 26*—*when bill for accounting not fatally defective.* A bill praying an accounting is not fatally defective in that complainant made no demand for such accounting before filing his bill.

11. ACCOUNT STATED, § 1*—*what constitutes.* The terms "stated" and "settled" accounts are sometimes used as equivalent expressions.

12. ACCOUNT, § 19*—*when equity will entertain bill to open up stated account.* An account stated is only prima facie evidence of its correctness, so that if the balance ascertained be tainted with fraud or mistake, or is brought about by undue advantage, equity will entertain a bill for the purpose of opening it for restatement or correction in part.

Appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1915. Affirmed. Opinion filed December 21, 1915.

## Statement of the Case.

This is an appeal from an interlocutory order or decree of the Superior Court of Cook county, entered July 23, 1915, wherein Nelson Chesman & Company, a corporation, its agents and attorneys, were, until the further order of the court, restrained from further prosecuting its certain pending suit in the Municipal

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Court of Chicago against the complainant, George H. Mayr, and also restrained from commencing any further suits against said complainant growing out of the transactions mentioned in complainant's bill of complaint.

The bill was filed March 18, 1915, and was verified by the affidavit of complainant. It is therein alleged, in substance, that complainant has been engaged in the drug business in Chicago, Illinois, for the past twenty-five years, and is and has been for many years the owner of a medical preparation known as "Mayr's Wonderful Stomach Remedy"; that the defendant Nelson Chesman & Company is a Missouri corporation, duly licensed to do business in Illinois and having an office in Chicago, Illinois, and is and has been for several years past engaged in business as a general advertising agency, and as such solicits advertisements from advertisers, which it causes to be placed in newspapers, magazines and periodicals throughout the United States for compensation paid it; that for several years prior to August 1, 1913, complainant sold his said remedy through druggists in various towns in the United States by advertising said remedy over the respective names of said druggists, which class of advertising is hereinafter referred to as "drug store advertising"; that shortly before August 1, 1913, complainant entered into negotiations with defendant which on said date resulted in an agreement in writing between them, which agreement provided that, in consideration of complainant placing his newspaper and magazine advertising through defendant's agency, defendant would give complainant the benefit of the lowest possible net rates obtainable by defendant from publishers and charge complainant ten per cent. over said lowest net rates; that the defendant was to make for complainant the best contracts possible with the publishers and give complainant the benefit of all discounts for time or space that the publishers allowed

defendant; that defendant was to bill complainant on the first of each and every month for daily and weekly papers for insertions of the previous month and for monthly publications of the current month; that defendant would allow complainant a cash discount for the prompt payment of his bills on the same date that said publishers allowed such a discount to defendant; that said agreement was to be in force for a period of one year from its date, with the privilege of extension from year to year unless written notice was given within thirty days before the expiration of the same, and that said agreement was in full force up to and including December 12, 1914; that prior to August 1, 1913, complainant, in addition to said drug store advertising, sold and distributed his said remedy through advertising by a plan hereinafter referred to as the ''mail order plan,'' viz., by advertising said remedy over the name and address of complainant and distributing and selling the same directly to the consumer through the mails, but that about August 1, 1913, said mail order plan was almost wholly abandoned; that subsequent to the making of the said written agreement of August 1, 1913, defendant endeavored to induce complainant to resume his said mail order plan of advertising, and certain negotiations were had which resulted, on or about September 10, 1913, in complainant entering into another agreement with defendant; that said other agreement provided that complainant was to resume his mail order plan of advertising and place such advertising with defendant, and that defendant would guaranty that the net amount of money received as the result of this class of advertising would pay the cost thereof and that defendant would reimburse complainant for any deficit that might exist; and that after September 10, 1913, and up to the month of December, 1914, both said drug store advertising agreement and said mail order advertising agreement were in full force.

It is further alleged in the bill, in substance, that in pursuance of said agreements the defendant prepared advertisements and placed them in various newspapers and periodicals; that defendant agreed to pay the various publishers for the same and to secure repayment from complainant upon presenting to him its bills therefor, together with a commission of ten per cent. added for placing said advertisements; that complainant's advertisements were published hundreds of times in more than six hundred publications throughout the United States; that complainant has spent for that purpose through the defendant, since August 1, 1913, approximately $150,000; that all contracts for the publication of complainant's advertisements were made by the defendant with the various publishers, and that the only information which complainant has had with reference to such contracts is such as furnished him by defendant, and that the only knowledge complainant has had as to the charges made by said publishers for said advertisements is likewise such as furnished him by defendant; that each month defendant rendered to complainant bills for advertising theretofore published, and that each of said bills purported to set forth truthfully the exact amount of space used in each publication for complainant's advertisements, the exact time the same were published and the exact charge made by each publisher; that complainant had implicit confidence in defendant, and trusted defendant, and accepted as true the statements contained in said bills, and upon that basis paid defendant thousands of dollars, and paid all bills rendered by defendant except bills rendered since and including December 12, 1914; that on or about said date complainant terminated his relations with defendant "because of facts coming to his knowledge leading him to believe that defendant had practiced fraud and deception on him, as hereinafter set forth."

It is further alleged in the bill, in substance, that complainant thereupon checked up some of the bills theretofore rendered by defendant and paid by complainant; that said bills did not truthfully set forth the exact amount of space used in each publication for complainant's said advertisements, and did not truthfully set forth the amount paid to the publishers by the defendant; that many of the items charged in said bills were false and fictitious; that advertising space had been charged to and paid by complainant at rates greatly in excess of the rates charged to the defendant by the publishers, and that defendant had fraudulently charged complainant for space in excess of the space used by complainant in such publications; that on numerous occasions the defendant was allowed by the publishers a certain discount, ranging from two to five per cent. for the cash payment of their bills, and complainant paid the bills rendered by defendant within the time necessary to obtain such discounts, but defendant contrary to the provisions of said written contract did not allow complainant such discounts, and complainant paid the bills as rendered without such discounts, having no knowledge at the time that defendant had obtained the same from said publishers, and complainant alleges, upon information and belief, that defendant fraudulently appropriated such discounts to its own use; that defendant did not endeavor to procure for complainant from said publishers the best rates obtainable, but on the contrary in numerous instances paid said publishers their highest rates and charged the same to complainant for the fraudulent purpose of increasing the amount of defendant's commissions; that complainant has no knowledge of the various publishers with whom defendant made contracts for complainant's advertisements, or of the terms and conditions of said contracts; that the only means complainant has, other than through defendant, to obtain information as to complainant's transactions

with defendant is by communication with said publishers, of whom complainant does not possess a complete list, and that to obtain such information from the publishers it would be necessary to communicate with over six hundred persons and with regard to thousands of items covering a period of about sixteen months, and that information so obtained would of necessity be untrustworthy, and that there would be no method of compelling a disclosure by any publisher.

It is further alleged in the bill, in substance, that the net amount of money received as a result of said mail order advertising did not equal the cost to complainant of said advertising by a sum of about $7,000, that defendant by the terms of said contract is liable to complainant therefor, and that defendant refuses to fulfil its guaranty and should be decreed to pay complainant the amount found due him on this class of advertising; that defendant claims there is now due it from complainant for advertisements placed by it a sum in excess of $8,000; that complainant believes and charges the fact to be that there is no money due defendant on account of said transactions, that complainant has overpaid defendant and that there is due complainant a large sum of money, the exact amount of which is unknown to complainant and can only be ascertained upon a complete accounting between the parties and upon a discovery by the defendant; that in addition to said amount so overpaid there is due complainant an amount in excess of $7,000 on account of defendant's said guaranty on said mail order advertising; that on January 27, 1915, defendant commenced a suit in the Municipal Court of Chicago against complainant based upon advertising placed for complainant and which covers thousands of items; that it will be impossible for complainant to defend said suit on account of facts in this bill alleged, unless an accounting is had between the parties and a discovery made by defendant; that complainant is informed and be-

lieves, and so alleges, that such accounting and discovery would make it possible to defeat defendant's suit and to establish a counterclaim in favor of complainant for thousands of dollars; that on or about March 8, 1915, defendant threatened to bring an additional suit against complainant for an amount approximating $1,000 for advertising claimed to have been placed by it, and complainant believes that defendant, unless restrained, will commence such proceedings, and that such suits tend to harass complainant and affect his financial credit, and that the items mentioned are false and fictitious and not due from complainant; that on account of the fiduciary relations between the parties the defendant owed to complainant the utmost good faith and was bound to perform on behalf of complainant every act and thing that might inure to the financial benefit of complainant in the transactions above set forth; that the account between the parties consists of thousands of items, having reference to transactions with more than six hundred different publishers, and covers a period of sixteen months; that defendant has books and records showing its transactions with complainant; and that complainant is informed and believes, and so alleges, that said books and records will show other instances of wrongdoing by defendant and that it is indebted to complainant in a large sum of money on account thereof.

The bill prayed that defendant make full answer thereto but not under oath (answer under oath being waived); that defendant make a full discovery of all matters and things aforesaid, and set forth a true account of all its acts with respect to the business of complainant transacted for or with complainant; that an accounting under the direction of the court be taken; that defendant be decreed to pay complainant whatever sum should appear to be due him, he being ready, and hereby offering, to pay defendant whatever sum should appear to be due defendant; that

defendant make a full discovery concerning the books and records in its possession or control showing the transactions above mentioned, and permit complainant to inspect said books and records; and that, in the meantime, defendant be restrained from further prosecuting said pending suit in the Municipal Court, and from instituting any other suits growing out of said transactions.

No answer was filed to the bill. On April 5, 1915, complainant moved for a preliminary injunction as prayed in the bill, and the court ordered that said motion be referred to a master in chancery to take proofs and report his conclusions of law and fact and his recommendations upon said motion for such injunction.

The parties appeared before the master by their respective solicitors. On behalf of the complainant the bill of complaint was read as an affidavit; the rules of the Municipal Court were introduced and an affidavit of John F. Rosen, solicitor for complainant, was read, setting forth in full the amended statement of claim of Nelson Chesman & Company, filed in its pending suit in the Municipal Court of Chicago against George H. Mayr. The said statement of claim consisted of four pages, to which was attached, as "Exhibit A," a further statement consisting of twenty-seven pages of certain items of advertising, each page containing about thirty-two lines of such items. It was therein claimed that the total sum due from said George H. Mayr, after allowing all just credits, was $6,268.16. It was stipulated between counsel that Nelson Chesman & Company had other claims against George H. Mayr than those involved in said pending suit in the Municipal Court and that it intended to bring suit therefor. On behalf of the defendant the written contract of August 1, 1913, mentioned in the bill, and the affidavit of A. A. Willson, manager of the Chicago office of defendant, were introduced in evidence. De-

fendant called as its witness the complainant, George H. Mayr, and he was examined and cross-examined at length.

The said written contract was in the form of a proposition signed by defendant and addressed to complainant. At the bottom thereof was the writing: "Accepted by George H. Mayr." It is therein provided in part as follows:

"In consideration of your placing all your newspaper magazine advertising through our agency, we will agree to give you the benefit of the lowest possible net rates to our agency in all publications taken up, and charge you for said advertising 10% over and above the actual net cost *to us*. We are to make *for you* the best contract possible in all publications and to give you the benefit of all discounts for time or space that publishers allow *us*. In case the amount of space contracted for is not used by you, we are to charge you back the short rate, *provided we are unable to induce the publisher to cancel* same, which we always endeavor to do for *our clients*. We are to bill you the first of each month for daily and weekly papers for insertions of the previous month and for monthly publications of the current month, and we are to allow you the cash discount for prompt payment of your bills on the same date that publishers allow this cash discount to us. * * * It is understood and agreed that you or your representative can have access to our records, files and publishers' bills pertaining to your business. * * * The termination of this contract is one year from date, with the privilege of extension from year to year, unless written notice is given within 30 days before the expiration of same."

The affidavit of A. A. Willson contained allegations, in substance, as follows: That in the conduct of its business with complainant, defendant always made contracts in its own name for space sold by it to complainant, and in all instances is directly liable to the publishers for the same; that complainant knew that his liability to pay was solely to defendant and to no

other persons; that defendant did not undertake any fiduciary relation to complainant and that the relation between the parties was solely that of seller and purchaser of advertising space in publications; that defendant's records, files and publishers' bills, pertaining to its business with complainant, have at all times been and are now subject to complainant's examination, and that complainant has had the same opportunity of knowing their contents as defendant, and that complainant has never been denied access thereto; that in the transaction of business between the parties defendant rendered complainant monthly bills, setting forth the publications in which the advertisements were inserted, the date and price thereof, and accompanying which were copies of the newspapers containing each advertisement, and thereby complainant had ocular demonstration, by inspection, as to the amount of space occupied by the advertisements; that upon presentation of each of said monthly bills, with the exception of the last one, complainant examined the same in connection with said accompanying newspapers, and, if any errors or omissions appeared therein, called defendant's attention to the same, and each of said monthly bills was adjusted, settled and agreed upon by the parties and paid by complainant; that complainant has within his power the means of knowing and stating any error, mistake, omission, or other fact, relating to said bills so settled and adjusted, and can definitely state the same; that defendant's pending suit at law against complainant is for the collection of the last monthly bill rendered and for certain other unsettled items; that the account on which the suit is based has been fully stated and rendered to complainant in all its items, and that complainant has the means of verifying the correctness of the same, by examination of the advertisements themselves, as to the fact of their insertion and as to the amount of space, and has also the means by ref-

erence to defendant's records, files and publishers' bills of ascertaining the exact price at which defendant purchased said advertising space as well as what discounts have been allowed defendant. Nowhere in said affidavit is there contained any denial of the allegations of fraud contained in said bill of complaint.

George H. Mayr, on direct examination by the solicitor for defendant, testified, in part, as follows:

"I was informed that the books and records of defendant would show other instances of wrongdoing on the part of defendant by Victor H. Young. * * * He was in my employ at the time. * * * He made this statement after he had discovered a great many discrepancies. * * * I suppose it was some time in December, 1914. * * * He said he had received the information from newspaper publishers. * * * We received a great many letters from publishers showing discrepancies in the amount charged us by Nelson Chesman & Co., and the amount charged to them. * * * After we terminated the relationship we found several discrepancies. * * * I repeatedly asked for information and would have to wait until such information came from the records in St. Louis. * * * I never asked for access or inspection of the records, files or publishers' bills. * * * The books and records were in St. Louis and * * * it was inconvenient to go there. I did not go to see the books for the reason we largely discovered the irregularities after discontinuing business, and for the reason that I supposed they would not be shown to me. * * * We did not measure the advertising for a long time, not until four or five months before we terminated our relationship. We could have ascertained the space by measuring it in the different newspapers, but we didn't do this. We relied on Nelson Chesman & Co."

On cross-examination Mr. Mayr testified in part as follows:

"For almost a year we did not measure the space. * * * Since checking up the bills and measuring the space I found discrepancies in their statements. * * *

I found that they charged me for more space than I was actually consuming. * * * The bills of the newspapers were rendered to Chesman & Co. I never saw any of them, and the bills rendered me by Chesman & Co. were supposed to show how much they paid the publishers. * * * Mr. Young obtained the information in regard to the space that had been used and billed to us by Chesman & Co., and he showed me the duplicate bills made by the publishers, and comparing these duplicate bills with the charges made to me by Chesman & Co. as to the total amount of space used, I found discrepancies. I can cite one instance where Chesman & Co. charged for 511 lines of advertising and the newspaper report showed that 375 lines were billed to me, and I paid for the first amount. * * * We obtained duplicate bills of short-rate charges from the publishers and I compared them with the bills rendered me by Chesman & Co. and found discrepancies. * * * I had not acquired any information up to the time of my termination of business relations with Chesman & Co. as to what they had paid the publishers. I relied upon their statements as to what they paid to the publishers as being correct.''

It was also stipulated between counsel that it is a custom among publishers to sell advertising space at different rates varying with the amount contracted to be used within one year, and if a customer uses less than the amount contracted for during such period the publisher will charge a higher rate for such lesser amount, or what is termed the ''short-rate.''

The master found that the sworn bill of complaint stated a good and sufficient cause of action against the defendant and one which is based on well established grounds of equitable relief; that the allegations of said bill had not been denied by answer, and that the facts as sworn to therein had not been successfully controverted or denied by any of the affidavits or evidence offered by defendant. The master further found that a court of equity had jurisdiction of the cause, (1) because of the fiduciary relations existing between

the parties as shown by the contract of August 1, 1913; (2) because of the allegations in said bill of fraud in relation to the excess charge for advertising space made by defendant to complainant over and above the amounts actually paid publishers by defendant for publishing complainant's advertisements, and in relation to the fraudulent appropriation of discounts by defendant; and (3) because of the numerous and complicated items of account in the matters in controversy between the parties; that the said items, being several thousand in number, cannot be expeditiously or accurately adjusted or adjudicated except upon an accounting in a court of equity; that, while paragraph 68 of the Practice Act (J. & A. ¶ 8605) might relieve some of the difficulties in connection with an accounting at law, it was not as expeditious or accurate as the method of accounting in chancery, and its existence did not supersede the jurisdiction of a court of equity; and that no demand for an accounting was necessary in view of the suit already pending in said Municipal Court, and for the further reason of the existence of the jurisdictional ground of fraud, fiduciary relations and complexity of account as a basis of equitable relief. The master recommended that a preliminary injunction issue in accordance with the prayer of the bill.

Objections were filed to the master's report and they were all overruled by him. Subsequently the report was filed in court and the objections thereto were ordered to stand as exceptions, and subsequently the court, after argument, overruled said exceptions and entered the interlocutory order or decree as above mentioned.

W. KNOX HAYNES and MICHAEL FEINBERG, for appellant.

JOHN F. ROSEN, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

This is a bill for a discovery and an accounting.  It is predicated upon three well recognized grounds of equitable relief, viz.: fraud, fiduciary relations and numerous and complicated accounts.  Incidental to the main relief asked the complainant prayed that, pending the hearing, the defendant be enjoined from further prosecuting its certain suit at law against complainant, and from instituting other threatened suits at law, involving some of the same transactions as are involved in the bill.  Complainant's motion for such preliminary injunction was referred to a master, and after a hearing on the sole issue whether such injunction should issue the master recommended its issuance, and subsequently the court, after hearing argument on exceptions to the master's report, followed the recommendation and issued the order appealed from.  The sole question before us is whether the Superior Court erred in granting the preliminary injunction.  (*Billboard Pub. Co. v. McCarahan,* 151 Ill. App. 227, 233.)

The main contention of counsel for defendant is that the allegations of the bill and the evidence taken before the master disclose the existence of a remedy at law so adequate and complete as to preclude a court of equity from assuming jurisdiction, (1) because the allegations of fraud are insufficient and for aught that appears in the bill a court of law may apply an adequate and complete remedy; (2) because the facts stated in the bill do not show a fiduciary relation between the parties but merely that of debtor and creditor; (3) because it does not appear that the accounts are complicated, though numerous; and (4) because the Municipal Court as a court of law, having first acquired jurisdiction, has, by reason of section 68 of the Practice Act (J. & A. ¶ 8605) and section 9 of chapter 51 of the Revised Statutes of this State (J. & A.

¶ 5526) and other statutes, every facility that a court of equity has for the conducting of an accounting.

Passing the question whether the facts stated in the bill sufficiently show that a fiduciary relation existed between the parties, we are of the opinion that the bill alleges sufficient facts showing fraud (which are not denied), and that the bill and the evidence taken before the master sufficiently disclose that the accounts are numerous and complicated, so as to give a court of equity jurisdiction. "Courts of equity have jurisdiction to compel an accounting, although the complainant has an adequate remedy at law, where fiduciary relations exist, or *fraud* is charged, or a discovery is sought." (1 Ruling Case Law, p. 224; *Billboard Pub. Co. v. McCarahan,* 151 Ill. App. 227, 235.) "Fraud is one of the broadest grounds of equity recognized by the courts. * * * It is the fraud which gives jurisdiction to this court, and the aggrieved party is not obliged to resort to another tribunal, possessed of less power and appliances to ascertain the truth, and grant the required remedy, although the other tribunal may have jurisdiction." (*Nelson v. Rockwell,* 14 Ill. 375, 376.) "Where the state of accounts between the parties is complicated and intricate, where the state of accounts between the parties is involved with third parties, where to do justice requires the employment of methods of investigation peculiar to courts of equity, and where it would be very difficult for a jury to unravel the numerous transactions, are conditions usually held to be sufficient to give a court of equity jurisdiction. The jurisdiction in equity does not, in such cases, depend upon the absence of a remedy at law, but upon its adequacy or practicability and upon the discretion of the court." (*Crown Coal & Tow Co. v. Thomas,* 177 Ill. 534, 540.) "In respect to the consideration of matters of account, the equitable jurisdiction of courts of equity is concurrent with that of courts of law, and no precise rule can be laid down as

to the cases in which a court of equity will exercise its jurisdiction. A court reserves to itself a large discretion upon the subject and will refuse or reject the cognizance of cases of account as the circumstance of the particular case may render expedient." (*Forster, Waterbury & Co. v. Webster Mfg. Co.,* 108 Ill. App. 41, 46.) And we think that it was proper for the Superior Court, having jurisdiction as a court of equity of the present bill for an accounting, to issue the preliminary injunction as incidental to the main relief prayed for. "The existence of a defense at law does not make an injunction against the action at law improper when for any reason the court of equity is a more suitable tribunal for the determination of the matter, or where equitable remedies, unavailable in the court of law, are necessary." (22 Cyc. 798; see also *Forster, Waterbury & Co. v. Webster Mfg. Co., supra.*) And, even admitting for the sake of the argument only that the Municipal Court as a court of law has, by reason of the statutes mentioned, every facility that a court of equity has for the conducting of an accounting, that fact, in our opinion, does not deprive the Superior Court as a court of equity, under the facts of the present case, of its long recognized jurisdiction in matters of account. (1 Corpus Juris, p. 619; 1 Story's Eq. Jur., sec. 80; 1 Pomeroy's Eq. Jur., sec. 279; *Garden City Sand Co. v. People,* 118 Ill. App. 372, 375; *Grimes v. Hilliary,* 38 Ill. App. 246, 248; *Kendall-ville Refrigerator Co. v. Davis & Rankin,* 40 Ill. App. 616, 625.)

And we do not think that under the facts disclosed there is any merit in the contention of counsel for defendant that the bill is fatally defective because no demand was made by complainant for an accounting before the bill was filed. (1 Corpus Juris, p. 627; *Chrichton v. Hayles,* 176 Ala. 223, 228.)

It is further contended by counsel for defendant that as it appears from the bill and the evidence taken

before the master that defendant rendered monthly accounts to complainant, which accounts except the last one were settled and paid by complainant, said accounts cannot be opened up except as to particular items claimed to be erroneous. Under the facts disclosed we are of the contrary opinion. In *State v. Illinois Cent. R. Co.*, 246 Ill. 188, 241, it is said: "The terms 'stated' and 'settled' accounts are sometimes used as equivalent expressions. * * * An account stated is only prima facie evidence of its correctness. * * * It may be impeached for fraud or mistake. The general rule is, that in an application to open a stated account the plaintiff must *either* charge *fraud or* state particular errors. If a complainant seeks the aid of a court of chancery under such circumstances, the charges in the bill must be definite and reasonably certain." In the present bill there are definite charges of fraud in connection with said monthly bills or accounts rendered. "While an account stated or settled will ordinarily, bar discovery and relief, yet if the balance ascertained is not correct or the settlement is infected with mistake or fraud, or brought about by undue advantage, equity will entertain jurisdiction for the purpose of opening it for restatement or for correction in part." (1 Corpus Juris, 716.)

For the reasons indicated we are of the opinion that the Superior Court did not err in entering the interlocutory order or decree appealed from, and the same is affirmed.

*Affirmed.*