Calumet National Bank, Appellee, v. Friendship Building and Loan Association, Appellant.

Gen. No. 32,908.

Opinion filed November 7, 1928.

ROSENTHAL, HAMILL & WORMSER, for appellant; WILLARD L. KING and IRVING B. GOLDSMITH, of counsel.

KNAPP & CAMPBELL, for appellee; KEMPER K. KNAPP and JOHN H. HERSHBERGER, of counsel.

MR. JUSTICE WILSON delivered the opinion of the court.

The complainant, Calumet National Bank, filed its bill in the circuit court of Cook county, charging that it was duly incorporated under and by virtue of the laws of the United States relating to national banks and was engaged in business in the city of Chicago; further charges that the defendant, Friendship Building and Loan Association, is a corporation organized and existing under and by virtue of the laws of the State of Illinois and engaged in business in the city of Chicago; charges further that on the 19th day of August, 1927, the said defendant commenced suit against said complainant in the circuit court of Cook county and filed its declaration therein, consisting of the common

counts and three special counts, charges that the special counts in effect set out that the defendant here, Friendship Building and Loan Association, had deposited with the complainant Calumet National Bank certain moneys as deposits and that the balance due the Friendship Building and Loan Association on said deposits amounted to the sum of $140,276.50. The said special counts further allege that the Friendship Building and Loan Association, defendant herein and plaintiff in the common-law action, drew certain checks or orders on its said account, payable to certain persons named in said checks or orders, or upon the order of such persons named therein, and that it was the duty of the complainant Calumet National Bank, defendant in said common-law action, to pay the amounts of said checks only to the persons named therein, but that the said Calumet National Bank wrongfully paid said sums named in said checks to persons other than the said payees.

The bill further charges that the court entered an order in said cause directing said association to file a bill of particulars and that from said bill of particulars it appears that the list of checks bore various dates from August 9, 1920, to November 1, 1926, and aggregated the sum of $121,927.56. The bill further charges that each check was payable to the drawer who was paid by the complainant in the regular course of business and known by the drawer or maker to be fictitious or nonexistent; charges further that the name of the payee in said check was indorsed upon said check and further charges that one Gallistel was secretary of the defendant association and general agent for said association in the transaction of all business and authorized to keep records and collect moneys and to receive notes and securities of the association; that he was also engaged in the real estate business on his own personal account and that the meetings of the directors

and stockholders of the association were held in his real estate office and that all the checks bore his name as secretary and that he was authorized to deliver the same and that each of said checks was delivered by the said Gallistel and that the name of the payee was indorsed on the back thereof; charges further that said Gallistel was a man of extravagant habits and lived in luxury and used the funds of the association for his private purposes and was short in his accounts and was in the habit of indorsing the names of the payees on the back of the checks and that the officers and directors of the association knew of this practice and that many of the checks in question were paid by the complainant after the officers and directors had such knowledge; charges further that the bill of particulars shows that many of said checks were dated more than five years before the commencement of the action by the association in the common-law suit and that many were paid by the bank to the association; charges that many of the persons named as payees received the benefit of said checks or of the amount represented therein either directly or through the release of their obligations to the said association or otherwise; charges that the bank is unable to obtain the precise facts in that regard without an examination of the books and records of the association, which has been refused; charges further that the claim of the said association is so complicated, intricate and involved that a jury in a court of law could not adequately understand the issues, nor arrive at a proper verdict; charges that said checks, with a few exceptions, were drawn to different persons and paid on different days; charges that the defendant association was negligent in not giving information to the bank which it should have had, and that some of the checks are outlawed by reason of the statute of limitations, Cahill's St. ch. 83; prays that the defendant be enjoined from proceeding with its action in the com-

mon-law suit in the circuit court and offers to pay whatever, if any, amount may be found due and asks for such relief as may be decreed in the cause in favor of the complainant.

The demurrer of the defendant association was filed and overruled.

On motion of complainant a temporary injunction issued restraining the defendant association from proceeding with the common-law action. From this order this interlocutory appeal has been perfected.

From the facts before us, as presented by the pleadings, it would appear that one Gallistel, an agent of the defendant, had been guilty of having forged the names of payees to certain checks and collected the amounts which, in turn, were charged by the complainant bank to the account of the defendant. It is insisted that these transactions of said Gallistel extended over a period of time, and that the defendant was precluded from recovery in some instances by reason of the running of the statute of limitations; that the defendant association was guilty of negligence in not having advised the bank of any knowledge it may have had of said transactions and continuing to permit Gallistel to act in the capacity of its agent. It is further insisted that the entire transaction involved the question of the right to collect the 211 checks and that, in some instances, the payees in said checks did, in fact, receive the money or its equivalent. It is charged in the bill of complaint that the entire transaction constituted one which was intricate and involved and that therefore a court of equity should take jurisdiction.

There is no charge in the bill of fraud nor is there any charge that a fiduciary relationship existed between the parties. The law is well settled that both equity and law have concurrent jurisdiction of cases of account, but, in equity, in order that it may take jurisdiction the account must be complicated and in-

volved. A further rule of law well recognized is that where the jurisdiction of equity and law is concurrent, the court obtaining jurisdiction in the first place shall retain it. The only exception to this is in matters of accounting where a fiduciary relationship existed between the parties, or the bill charges fraud, or discovery is sought, or where, as is claimed in the present case, the account is so intricate, complicated and involved that it would be impossible for a court of law and a jury to pass upon the issues by reason of the complexity of the situation.

In the case at bar there are no mutual accounts between the parties. The complainant does not claim that the defendant owes it anything, but, on the other hand, the only liability, if any, that exists is that of the complainant to the defendant so that, strictly speaking, it is not a matter of account. A court of equity is a great deal more loath to take jurisdiction of a cause where jurisdiction has already been had by a court empowered to hear such a proceeding. For that reason, it becomes necessary to indulge every intendment in favor of the person seeking to have his cause of action heard at law, rather than to divest him of that right.

The rule is well stated in Pomeroy's Equity Jurisprudence, 3rd Ed., section 179, as follows:

"§ 179. Cognizance First Taken by a Law Court.— In further limitation upon the power of equity to interfere where the primary rights, interests, or estates are legal, the doctrine is well settled that when the jurisdictions of law and of equity are concurrent, the one which first takes actual cognizance of any particular controversy ordinarily becomes thereby exclusive. If, therefore, the subject-matter or primary right or interest, although legal, is one of a class which may come within the concurrent jurisdiction or equity, and an action at law has already been commenced, a court of

equity will not, unless some definite and sufficient ground of equitable interference exists, entertain a suit over the same subject-matter even for the purpose of granting reliefs peculiar to itself, such as cancellation, injunction, and much less to grant the same kind of relief which can be obtained by the judgment at law. The grounds which will ordinarily prevent the application of this doctrine, and will permit the exercise of the equitable jurisdiction in such cases, are the existence of some distinctively equitable feature of the controversy which cannot be determined by a court of law, or some fraudulent or otherwise irregular incidents of the legal proceedings sufficient to warrant their being enjoined, or the necessity of a discovery, either of which grounds would render the legal remedy inadequate. This rule results in part, in the United States, from the provisions of the national and state constitutions securing the right to a jury trial which belongs especially to the machinery of legal actions.''

To the same effect see *Church v. Anti-Kalsomine Co.,* 118 Mich. 219; *Vannatta v. Lindley,* 198 Ill. 40.

The fact that 211 checks are involved in the proceeding does not necessarily, of itself, constitute an action so complicated and involved that it can not be tried at law. The issues are not involved. The principal question appears to be what checks, if any, bore a forged indorsement of the payee and were they paid by the bank upon said forged indorsement. Is the defendant association precluded from recovery by reason of the running of the statute of limitations as to certain checks, and is the defendant association estopped from recovery by reason of negligence on its part after having received statements from the bank?

The number of checks involved does not of itself constitute nor create a complicated account. *Field v. Brown,* 146 Ind. 293; *Nashville, C. & St. L. R. Co. v. T. S. Jenkins & Sons,* 155 Tenn. 605.

We have examined the cases cited by counsel for complainant and find that the case of *Forster, Waterbury & Co. v. Webster Mfg. Co.*, 108 Ill. App. 41, was an action on a contract between certain parties wherein the price to be paid was predicated upon the cost of raw material, overhead expenses, etc., and asked for a discovery because the evidence was peculiarly within the province and control of the defendant.

The case of *Billboard Pub. Co. v. McCarahan*, 151 Ill. App. 227, was an action between employer and employee and one for mutual accounts between the parties and for discovery. In this case the bill also charged that the defendant was guilty of fraud and also stated a fiduciary relationship between the parties.

In the case of *Mayr v. Nelson Chesman & Co.*, 195 Ill. App. 587, the bill charged that a fiduciary relationship existed between the parties and that the defendant was guilty of fraud.

The case of *Ely v. King-Richardson Co.*, 265 Ill. 148, was an action between principal and agent and was started in the first instance in equity.

From the facts as disclosed by the pleadings, we fail to see why the issues cannot be fully, completely and fairly disposed of in law and we find no such involved, intricate matters of account as required the intervention of a court of equity.

The defendant association having elected to proceed at law against the defendant, and to have said cause tried by a jury, should be entitled to proceed in the manner and form which it has elected. Some of the matters of defense are peculiarly matters which a jury is particularly well qualified to pass upon. The bill does not set out such facts as entitled it to the intervention of equity and the mere allegation that the claim of the defendant association is complicated and involved does not necessarily make it such but, on the other hand, is a mere conclusion of the pleader. As

already stated, the action had already been commenced at law and there is no question involved which would give equity jurisdiction of the action except the bare allegation that the claim is complicated, intricate and involved.

For the reasons stated in this opinion the order of the chancellor of the circuit court granting the temporary injunction will be reversed.

*Order reversed.*

HOLDOM, P. J., concurs.

TAYLOR, J., not participating.